THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WAYNE S. MIKEL *et al.*, Defendants.—(CHARLES W. SEATON, Defendant-Appellant.)

Fourth District   No. 15051

Opinion filed June 18, 1979.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Vermilion County, defendant Charles Seaton was convicted on March 17, 1978, of murder and two counts of aggravated assault arising from a series of incidents occurring in Danville on the night of November 19, 1977. He was sentenced to concurrent terms of 1 year for each of the aggravated assaults and 15 to 35 years for the murder. On appeal he asserts that the court erred in refusing his tendered instructions as to involuntary manslaughter in regard to the murder charge and in failing to instruct the jury as to reckless conduct in regard to all three charges.

Defendant and codefendant Wayne S. Mikel were jointly indicted but were tried separately. We have affirmed Mikel's convictions and sentences in *People v. Mikel* (1979), 73 Ill. App. 3d 550, 391 N.E.2d 21. The evidence presented at both trials was in substantial conformity. At defendant's trial evidence was presented that sometime between 11 and 12 p.m. on November 19, 1977, defendant drove his truck through Danville with Mikel as a passenger. At about 11:30 p.m., a truck stopped at the corner of Jackson and Van Buren and the passenger, later identified as Mikel, fired a rifle out the window narrowly missing one of the black men standing nearby. That man made a photographic and in-court identification of defendant as the driver of the truck.

A few minutes later, this truck was seen at the corner of Washington and North, shots were fired from the truck and a black man was hit and died. Shortly thereafter and several blocks away on Gilbert (Route 1), the passenger in a truck later identified as defendant's, fired a rifle out the truck window putting a bullet through the door panel on the driver's side of a car in the adjacent lane.

A few days later, Danville police officers questioned defendant regarding the shooting. An officer testified that after being advised of his *Miranda* rights, defendant told the officers that on the night in question, after he and Mikel left a tavern on Main Street in Danville, Mikel said, "Let's get us a nigger" or something like that and defendant said that he (defendant) had a gun. At trial, defendant denied that such a conversation occurred and denied telling that to the police. In his statement, defendant also said that Mikel was just shooting the gun at Washington and North when he hit the man, that Mikel shot twice, but the man was still walking when they left. Defendant also showed the officers the route he and Mikel took that evening.

At trial, defendant testified that he was driving his truck that night

and Mikel was a passenger. Defendant had been trapping that day and had his rifle in a gun rack in the truck. He remembered driving on Jackson and Mikel "hollering at some colored people," but he did not know if anyone used the gun then. At the intersection of North and Washington, Mikel pointed the gun out defendant's window and shot a couple of times. Mikel then said that there was a man back there and defendant looked back and saw the man walking. They then drove to Westville on Route 1, but defendant recalled nothing unusual happening on the way.

The question of whether defendant was entitled to have a manslaughter instruction given is somewhat complicated. He argues that the jury could have determined that Mikel shot indiscriminately, without intent to hit anyone or knowledge that he was likely to do so or the jury could have found that because of intoxication, Mikel was unable to form either of those mental states. Defendant maintains that under those circumstances, Mikel would have possessed a mental state of only recklessness and would have been guilty of only involuntary manslaughter as to the killing of Anvil Nelson. Accordingly, he argues, defendant's guilt by accountability would only be for that offense. The State maintains that the evidence did not support a determination by the jury that Mikel lacked the required intent or knowledge to commit murder.

In this State the rules determining whether one may be held criminally liable for the conduct of another are set forth in section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 5—2), which provides that such accountability exists when:

> "(a) Having a mental state described by the statute defining the offense, he causes another to perform the conduct, and the other person in fact or by reason of legal incapacity lacks such a mental state; or
>
> (b) The statute defining the offense makes him so accountable; or
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

As defendant's theory in support of the involuntary manslaughter instruction is premised upon the jury's possible finding that Mikel possessed a mental state of recklessness at a time when Mikel killed Mr. Nelson, we must consider the application of section 5—2 to the various mental states that defendant might have possessed at that time.

Section 5—2(a) concerns the situation where the principal lacks the required mental state for an offense but a person to be charged with accountability possesses that mental state and causes the principal to commit the conduct required for the offense. Intent or knowledge is the

mental state required for murder while involuntary manslaughter requires recklessness. (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1, 9—3.) If defendant here aided, abetted or encouraged the conduct of Mikel which brought about the unjustified killing of Mr. Nelson, defendant's acts would be a cause of that killing. If defendant did so with the intent that Mr. Nelson be killed or receive great bodily harm or with knowledge that a strong probability existed that this would happen, defendant would have been guilty of murder even though, as claimed by defendant, Mikel possessed only the mental state of recklessness.

Furthermore, section 5—2(a) could not be the basis of any accountability of defendant for involuntary manslaughter because accountability there depends upon the principal lacking the mental state for the offense and defendant's theory is premised upon Mikel possessing that mental state, recklessness. Likewise, section 5—2(b) could not be the basis for any accountability of defendant for involuntary manslaughter because section 9—3 defining that offense makes no provision for criminal liability by accountability. Accordingly, we must determine whether section 5—2(c), the provisions by which accountability usually occurs, gives rise to possible accountability by defendant for involuntary manslaughter.

■■ Under early decisions, it was held that at common law there could be no accessory before the fact to involuntary manslaughter because the crime did not require premeditation, but some later cases disputed that theory. (Annot., 95 A.L.R.2d 175 (1964).) In Illinois, prior to the adoption of section 5—2, one could be held criminally liable for the criminal conduct of another by aiding, abetting or assisting another. The statute so providing made no reference to mental state. (Ill. Rev. Stat. 1959, ch. 38, par. 582.) Under that legislation, persons could be held accountable for involuntary manslaughter without intending that the victim be killed. (See *People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839; *People v. Barrett* (1913), 261 Ill. 232, 103 N.E. 969; *Ritzman v. People* (1884), 110 Ill. 362.) However, section 5—2(c) requires that the one to be charged with accountability intends "to promote or facilitate" the commission of the offense. Just as one cannot attempt murder without an intent to kill (*People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888), it would seem that one could not intend to "promote or facilitate" the commission of a homicide without intending that the victim be killed. As we have indicated, had defendant had that intent, he would have been guilty of murder.

■■ A comprehensive analysis of the question of whether a person guilty of only recklessness can be guilty of involuntary manslaughter on an accountability theory is contained in LaFave and Scott, Criminal Law §64, at 510-511 (1972). Those authors indicate that the cases are not uniform

as to whether one can by recklessness become accountable for another's commission of an offense for which the required mental state is recklessness. However, the authors conclude that under statutes such as section 5—2(c), which they specifically refer to in a footnote, intent that the result of the offense occur is a necessary element to establish accountability and that a mere reckless mental state cannot give rise to accountability for an offense, even though the mental state for that offense is also recklessness. Although no Illinois case concerning this effect of section 5—2(c) has come to our attention, we agree with those authors and conclude that had defendant here had a mere reckless intent he could not have been found guilty of involuntary manslaughter on an accountability theory.

The trial court properly refused the involuntary manslaughter instruction.

■■ Defendant next contends that the court erred in failing to instruct the jury on reckless conduct with respect to the killing and the other two shooting incidents. We first note that defendant tendered instructions defining recklessness and the offense of reckless conduct, but tendered an instruction on the issues in reckless conduct only with respect to the shooting incident at the corner of Jackson and Van Buren. With respect to reckless conduct instructions, his post-trial motion referred only to the court's failure to give the above tendered instructions. Thus, defendant waived this issue with respect to the other two incidents. (*People v. Grant* (1978), 71 Ill. 2d 551, 377 N.E.2d 4; *People v. Rogers* (1975), 32 Ill. App. 3d 788, 336 N.E.2d 784.) In any event, the failure to instruct on reckless conduct was not error.

■■ Defendant argues that based on the evidence presented at trial, the jury could have believed that Mikel was merely acting recklessly when he shot out of the truck window, and therefore, under an accountability theory, defendant would only have been guilty of reckless conduct. Our earlier discussion of intent and guilt through accountability is equally applicable here. Section 5—2(c) requires that defendant act with the intent to promote or facilitate the offense. If defendant intended that someone be endangered or receive bodily harm through the reckless acts of another, then defendant would be acting with intent rather than recklessly and therefore could not be guilty of reckless conduct by accountability.

■■ Defendant also contends that the evidence would support a jury verdict that he was guilty of reckless conduct in his own right by allowing someone to shoot a gun out of his truck window. Defendant was not specifically charged with reckless conduct and we do not believe that reckless conduct is an included offense of murder or aggravated assault. If a person's conduct causes the death of another, reckless conduct is not an

appropriate charge. (See *People v. Johnson* (1975), 32 Ill. App. 3d 36, 335 N.E.2d 144.) With respect to the aggravated assault charges, reckless conduct involves different elements of proof and thus is not an included offense. (Ill. Rev. Stat. 1977, ch. 38, par. 2—9.) Placing another in reasonable apprehension of receiving a battery is a necessary element of the offense of aggravated assault (Ill. Rev. Stat. 1977, ch. 38, par. 12—2), while reckless conduct requires that the accused cause bodily harm to or endanger the bodily safety of another (Ill. Rev. Stat. 1977, ch. 38, par. 12—5). One can place another in reasonable apprehension of receiving a battery without causing that person bodily harm or endangering his bodily safety and vice versa.

For the reasons stated, defendant's convictions are affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.