THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDGAR CHRISTOPHER WATSON, Defendant-Appellant.

Fourth District   No. 17065

Opinion filed February 4, 1982.

994

Frederic M. Grosser, of Grosser and Hays, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Donald R. Parkinson, Assistant State's Attorney, and Heidi Ladd and Timothy Andrew Swain, law students, of counsel), for the People.

JUSTICE LONDRIGAN delivered the opinion of the court:

The defendant was convicted of the involuntary manslaughter of 23-month-old Shalita Stewart. He was sentenced to 2 years' imprisonment.

Shalita died of an infection which resulted from burns suffered while she was under the defendant's care. Medical testimony showed that Shalita suffered circumferential burns on her lower extremities caused by immersion in a hot liquid. She had no burns above the waist. Very few of her burns were splash burns, *i.e.*, those that might be caused by the splashing of a hot liquid.

Several witnesses at trial testified regarding the defendant's out-of-court statements. Shalita was burned on September 3, 1980. Shortly after Shalita was admitted to the hospital on that date, the defendant spoke with a registered nurse there. The defendant told the nurse that, at the time of Shalita's accident, a pan of eggs was boiling on the stove. The defendant heard another child in the apartment crying and went to investigate. When the defendant left the kitchen, Shalita apparently pulled the pan of boiling water off of the stove and onto herself.

Also on September 3, the defendant told a hospital social worker a somewhat different story. Shalita and her brother were in the bathroom. The toilet overflowed. While the defendant went into the bathroom to see what was going on, Shalita went into the kitchen. There, she grabbed a pan of boiling eggs and tipped the contents of the pan onto herself.

On September 4, 1980, a Department of Children and Family Services' investigator for Child Protective Services visited the defendant at home. The defendant related the previous days' events to the investigator. The defendant and Shalita were in the bathroom. When the defendant flushed the toilet, it overflowed. While he was cleaning up, he heard a scream coming from the kitchen area. There, he found Shalita sitting on the kitchen floor with a pot, that had formerly held boiling water and eggs, overturned between her legs. Water and eggs were on the floor. The defendant wrapped Shalita in a blanket and put her on the sofa. Then he went downstairs to ask a neighbor to call an ambulance and to call Shalita's mother. When the investigator entered the kitchen, she observed

a ring of a sticky substance on the kitchen floor along with some eggshells. The defendant showed her a two-quart sauce pan with a handle which had, according to the defendant, contained the eggs. The ring of sticky substance was located in front of the stove. The circumference of the pot fit the circumference of the ring on the floor.

The paramedic from the ambulance service who answered the call about Shalita also testified. He stated that, when he drove up to the house, he was told that a baby had been burned and was inside. When he entered the house, he looked into the kitchen area but did not notice any water or a pan on the floor.

On appeal, the defendant argues that the admission of his out-of-court statements resulted in improper impeachment by contradiction. The defendant's characterization of this evidence is incorrect. As the defendant did not testify, he could not be impeached.

■■ The defendant's various versions of how Shalita's injury occurred were attempts to absolve himself of any blame. He told several people that Shalita pulled a pan of water off of the stove and onto herself. However, Shalita's burns were not of the type which would result from the splashing of hot liquid. Also, the paramedic testified that he saw no water or pan on the floor. Thus, other evidence presented at trial showed the falsity of the defendant's out-of-court statements. A defendant's false exculpatory statement has independent probative value as evidence of consciousness of guilt and is admissible. (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.) Therefore, we find that the trial court did not err when it admitted these false exculpatory statements into evidence.

The defendant next claims that the evidence was insufficient to prove him guilty beyond a reasonable doubt of involuntary manslaughter.

A reviewing court will not set aside a guilty verdict unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt as to the guilt of the accused. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) After a careful review of the record, we find the verdict to be supported by the evidence. Medical testimony showed that the child had been immersed in a hot liquid. There was no evidence to support any other theory as to how the injury occurred. Shalita was under the sole care of the defendant at the time she was injured.

In his closing argument, the prosecutor referred to defendant's out-of-court statements. He said, "what we do have in the way of explanation of how these burns took place to her is a totally unbelievably, at best improbable tale. Realistically and based upon the medical testimony you have heard, an out-and-out lie what was told [*sic*]." A defense objection to this statement was overruled. The prosecutor made several other references to the improbability of defendant's version of events and also

constructed a scenario regarding the origins of Shalita's immersion burns. The defendant argues that the prosecutor's closing argument was improper and unduly prejudicial.

■■■ While we would wish for more restraint and less theatrics from the prosecutor, we do not find the State's closing argument to be improper or unduly prejudicial. As the medical evidence so completely refuted defendant's out-of-court statements, legitimate inferences could be drawn to suggest that the defendant was lying. The prosecutor's closing argument was properly based upon evidence in the record and legitimate inferences therefrom. (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153; *People v. Bost* (1980), 80 Ill. App. 3d 933, 400 N.E.2d 734.) The scope, substance, and style of closing argument must be left to the discretion of the trial court, who is in a superior position to determine the real effect of any statement which might be considered prejudicial. (*People v. Bloodworth* (1979), 68 Ill. App. 3d 341, 385 N.E.2d 904.) In the case at bar, we find no abuse by the trial court of this discretion.

The defendant next argues that the trial judge improperly granted the State's motion to excuse a juror who had already been selected and sworn; the basis for the motion was the juror's failure during *voir dire* to reveal the full extent of his own and his brother's criminal records.

Although we do not have a transcript of the *voir dire* or of the prosecutor's first expression of doubt concerning the juror's candor, the record does contain the transcript of the hearing on the State's motion. At the outset of the hearing the trial judge, prosecutor, and defense counsel summarized the earlier events, and no question is raised concerning the accuracy of the summary. We deem the record sufficiently complete for us to address this issue. *Cf. Hehir v. Bowers* (1980), 85 Ill. App. 3d 625, 407 N.E.2d 149 (in absence of transcript of *voir dire* or substitute for one, question regarding juror's answers during *voir dire* will not be considered).

Before opening statements were made the trial judge considered the State's motion to excuse the juror. According to the summary presented at the start of the hearing, after the selection of the 12 original jurors but before the selection of alternate jurors the prosecutor expressed his doubt whether the juror in question had been completely honest in answering several questions during *voir dire*. Asked about his and his family members' experiences with the criminal justice system, the juror had said that his one brush with the law was a traffic conviction and had not mentioned a brother with a criminal record. The trial judge told defense counsel that given the State's plan to excuse the juror he could use all four of his remaining peremptory challenges during the selection of the alternate jurors; defense counsel agreed to the use of the peremptory challenges but did not agree to the intended removal of the juror.

After the details described above were summarized at the hearing, the prosecutor listed the convictions that constituted the juror's and his brother's records. One of the juror's offenses resulted in probation under section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 710); the prosecutor also said that the juror had been convicted of shoplifting, unlawful use of weapons, and theft. A second person believed by the prosecutor to be related to the juror was also mentioned.

The juror was then questioned by the parties. The prosecutor listed the four offenses that he had already described to the court and defense counsel; the juror remembered and acknowledged three of the four. The juror replied affirmatively to the prosecutor's question whether a brother had "been involved with the criminal justice system several times." Defense counsel also questioned the juror. The juror said that he had not mentioned all his convictions during *voir dire* because he had not known "that that would have anything to do with it. I thought it was dropped." The juror then replied negatively to the question whether his or his brother's experiences would advantage or disadvantage the State or the defendant and affirmatively to the question whether he could be fair to both sides.

The State then argued that the juror's incomplete answers during *voir dire* justified his dismissal for cause. Defense counsel objected to this and to the exercise of a peremptory challenge. The trial judge excused the juror but viewed the State's motion as a peremptory challenge rather than one for cause.

■■ Once a juror has been selected and sworn, neither side may peremptorily challenge him. (*People v. Curran* (1918), 286 Ill. 301, 121 N.E. 637.) By the time the prosecutor told the trial judge and defense counsel that this particular juror may have answered several questions incompletely, the juror had been selected and sworn; the State's objection to him therefore came too late. Had the juror's false answers during *voir dire* pertained to his ability to render a verdict based only on the evidence adduced at trial and free from preconceived opinions, then the trial court would have acted properly in removing him from the jury. *Cf. People v. Oliver* (1977), 50 Ill. App. 3d 665, 365 N.E.2d 618 (juror's disqualifying state of mind concealed during *voir dire* but discovered after delivery of verdict; trial court should have granted defendant's motion for new trial).

The defendant does not argue that any of the 12 persons who decided his guilt was biased. Although trial and conviction by a biased jury is never harmless error (*Oliver*), the defendant has not shown and indeed does not allege that the dismissal of this juror resulted in prejudice. A defendant's right to trial by an impartial jury does not mean that he is entitled to have a particular person serve on the jury. (*People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063.) Thus, although the trial court

erred in entertaining and granting the State's tardy motion to excuse the juror, the mistake was harmless.

■■ The defendant was originally charged with four counts of involuntary manslaughter. He made a pretrial motion to dismiss each of the four counts of the indictment for failure to state an offense. Counts I and II were dismissed. Counts III and IV were not. The defendant claims that the trial court erred in its refusal to dismiss counts III and IV. We disagree. Both counts charge the offense in the language of the statute. They are sufficiently specific to have enabled the defendant to prepare his defense and to protect him from double jeopardy. They state the date and place of the offense and fully identify the defendant and the victim. They set out the cause of death and the act which led to the death. Thus, the specificity of these counts renders them sufficient. *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244.

■■ The defendant also complains that the counts charge him with an omission without alleging a corresponding duty. The defendant did have a duty to watch out for the well-being of the child, Shalita. He had a duty to prevent her from being immersed into water hot enough to cause great bodily harm or death. Although counts III and IV do not specifically state the nature of the defendant's duty, they imply all the elements of his duty. The counts say that Shalita was a 23-month-old baby and allege that she was immersed into water hot enough to cause death or great bodily harm. The caretaker of a child has a duty to protect the child from harm.

The defendant made a pretrial motion for a bill of particulars requesting information regarding the specific physical acts peformed by him and the instrumentality used. This motion was denied. The defendant claims that the trial court erred by denying this particular motion. We disagree.

■■ ■ The decision to grant a bill of particulars lies within the sound discretion of the trial court. (*People v. Lanzotti* (1978), 61 Ill. App. 3d 451, 378 N.E.2d 369.) The trial court's denial of the bill of particulars was certainly not an abuse of its discretion. Judge Jensen said that the defendant had received sufficient opportunity to gain information through the discovery process. The court also said that it did not know what additional information the defendant could possibly want.

■■ The defendant made several motions asking the trial court to require the State to elect which count it would proceed upon. All motions on this subject were denied. The defendant argues that the State should have been required to make such an election. This claim has no merit. In a case involving only one offense, the prosecution may proceed under as many counts as are necessary to meet the variations of proof required and will not be required to elect one or the other. *People v. Cobetto* (1975), 32 Ill.

App. 3d 696, 336 N.E.2d 505; *modified on other grounds* (1977), 66 Ill. 2d 488, 363 N.E.2d 854.

During the trial, Jerry Otto testified that he became involved in the investigation of Shalita's injuries because he was a social worker and had to keep aware of reported child abuse. A defense objection to this statement was sustained and the jury was instructed to disregard it. Debra Taylor said at trial that she visited the defendant's residence because her office had received a report of suspected child abuse. A defense objection to this statement was sustained and the jury was instructed to disregard it. Defense counsel also objected to Taylor's recital of a conversation between herself and the defendant concerning the final outcome of Shalita's injury. According to Taylor, the defendant said "jail is what could happen." Again, the defense objection to this statement was sustained, and the jury was instructed to disregard it. Defense counsel eventually moved for a mistrial on the grounds that the testimony described above was highly prejudicial, but the trial court denied the motion.

■■ The defendant now argues that his motion for a mistrial should have been granted. The authority to declare a mistrial is within the discretion of the trial court and is not subject to review in the absence of an abuse of discretion. (*People v. Chaffin* (1971), 49 Ill. 2d 356, 274 N.E.2d 68.) We find no abuse of discretion here.

■■ In another claim of procedural error, the defendant argues that his motion for a directed verdict should have been granted. Upon a motion for a directed verdict, the trial judge must construe the evidence most strongly in favor of the party against whom the motion is directed, and when there is evidence which either supports his side of the case or upon which reasonable minds might reach different conclusions the motion must be denied. (*People v. Tibbs* (1978), 57 Ill. App. 3d 1007, 373 N.E.2d 624; *People v. Tatum* (1966), 77 Ill. App. 2d 178, 222 N.E.2d 177.) In the instant case, medical evidence strongly supported the theory that Shalita was immersed in water hot enough to burn her. Defendant's own out-of-court statements implied that he was the only adult present in the household when this injury occurred. Thus, the trial judge was correct in denying the defendant's motion for a directed verdict.

The defendant tendered his instructions 3 and 4, which were modified versions of Illinois Pattern Jury Instructions, Criminal, No. 7.08 (hereinafter IPI). These instructions contained verdict forms for each count of the indictment. The defendant's instructions 3 and 4 were refused. The State's instruction 11(b), which was IPI Criminal No. 7.08, was given over the defendant's objection. The defendant contends that the trial court erred by giving the State's instruction and by refusing his

proposed instruction. IPI Criminal No. 7.08 correctly stated the governing law in this case and gave due consideration to the facts. Under these circumstances, Supreme Court Rule 451(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(a)) mandates that the IPI instruction shall be used.

The defendant cites *People v. Gauwitz* (1980), 80 Ill. App. 3d 362, 400 N.E.2d 92, for the proposition that it is proper for the court to give two sets of verdict forms when the indictment charges different acts. We find *Gauwitz* to be distinguishable. In *Gauwitz* the defendant objected to the giving of four verdict forms. These forms consisted of IPI Criminal Nos. 26.02 and 26.05. We said there that the instructions as a whole properly conveyed to the jury the nature of the situation. In *Gauwitz* we did not say that two sets of verdict forms *had* to be given.

■■■■ Defendant's final argument is that his 2-year sentence of imprisonment is an abuse of discretion. The appellate court cannot substitute its judgment for that of the trial court merely because it would balance the factors involved in sentencing differently. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) It is apparent from the record that the trial court here properly considered factors in both aggravation and mitigation. The trial judge also gave the reasons behind his sentencing decision. The defendant's sentence does not represent an abuse of discretion.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.