THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN G. MAXWELL, Defendant-Appellant.

Fourth District   No. 4—87—0448

Opinion filed December 30, 1988.—Rehearing denied February 1, 1989.

LUND, J., specially concurring.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

After a joint bench trial in the circuit court of Livingston County, defendant Stephen G. Maxwell, along with codefendant Joe W. Harvey, was convicted on April 17, 1987, of involuntary manslaughter. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).) The conviction of and subsequent sentence imposed upon Harvey were affirmed by this court. (*People v. Harvey* (1988), 174 Ill. App. 3d 463, 528 N.E.2d 1053, *appeal denied* (1988), 123 Ill. 2d 562.) On June 25, 1987, defendant was sentenced to 18 months' periodic imprisonment. He has appealed and, as did Harvey, he challenges only the suffi-

ciency of the evidence to support his conviction. As we did in *Harvey*, we determine here the evidence of defendant's guilt was sufficient for the trial court to have found that guilt to have been proved beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) Accordingly, we also affirm here.

We need not recite the evidence in full as the reader may obtain that information from the *Harvey* opinion. The charges arose from the death of G.H., a 15-year-old, 100-pound, 5-foot 2-inch resident of Salem Children's Home (Salem), which occurred on August 3, 1986, while defendant and a supervisor for Salem were attempting to restrain G.H. as a punishment for disobedience. Harvey was attempting to place G.H. in a basket hold while Elliott was at G.H.'s feet when G.H. grabbed a bed with one hand. Maxwell, who had supervisory responsibility over Harvey and Elliott and who was standing by, entered the fray, stepped on G.H.'s wrists in order to cause G.H. to lose hold of the bed. G.H. released his hold and, in the process, swung around hitting Harvey in the face. Defendant then laid down on G.H. with his sternum across G.H.'s upper body. In some way G.H. disengaged himself from defendant.

In the process of the disengagement between defendant and G.H., defendant tried to control G.H.'s loose arm but G.H. bit his arm. At this point, defendant became angry and placed his knee on the side of G.H.'s neck while Elliott was striking G.H. in the legs and Harvey was striking G.H. in the midpoint of his body with the side of his hand and his forearm. At this point, the three apparently obtained control over G.H. Elliott testified that blood then trickled slightly from G.H.'s mouth. Defendant, then apparently believing G.H. was under control, left to get some handcuffs. The evidence fully indicated that all three knew the purpose of attempting to place G.H. in restraint was to put him in a basket hold as a punishment. The evidence further indicates that although G.H. was then shown to be in a weakened condition, defendant, who was in charge, gave no directions to Harvey or Elliott to use any restraint or to check on the condition of G.H. before placing him in the basket hold.

As we recited in *Harvey*, while defendant had left the room, Harvey and Elliott placed G.H. in a basket hold and when defendant returned, defendant placed handcuffs upon the then limp G.H. At this time, Mark Craig, another Salem employee, arrived on the scene, became concerned with the appearance of G.H. and warned defendant, Harvey, and Elliott that G.H. might be ill. At that point,

the persons present discovered G.H. was not breathing and had no pulse.

Section 9—3(a) defines the offense of involuntary manslaughter in these words:

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly \*\*\*." Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).

In *Harvey*, we deemed the testimony of Phillip Hinton, a resident of Salem, to be significant and noted that the trial court had placed emphasis upon his testimony. Hinton related he had entered the room at the time G.H. had bitten defendant. Hinton testified that defendant asked G.H. if he was ready to be put in restraint and G.H. responded he was not and claimed an inability to breathe, whereupon Harvey struck G.H. in the stomach several times. According to Elliott's testimony, G.H. complained of an inability to breathe more than once. Although defendant testified he did not hear G.H. complaining of an inability to breathe, the trial court could properly find that G.H. made this complaint while defendant was still in the room and defendant must have heard it.

In our opinion in *Harvey*, we recognized the difficult task which defendant, Elliott, and Harvey had in attempting to subdue G.H. without hurting him. We considered the fact that they refrained from a use of maximum force and could have easily gained control over him had they used such force. Nevertheless, we held that eventually the conduct which was used in restraining G.H. and placing him in a basket hold became reckless. Significance was given to the fact that defendant, who weighed some 240 pounds, and Elliott and Harvey, each of whom weighed approximately 150 pounds, were scuffling with a younger boy who, although very strong and aggressive, weighed only approximately 100 pounds. We also gave great importance to the testimony which the court could and apparently did believe, that G.H. had complained twice of an inability to breathe, had wet his pants, and had gone limp. We also noted that although G.H. resisted viciously the attempts of the three to place him in restraint, the evidence did not indicate G.H. would attack them had they let go of him.

Defendant's situation here differs from that of the accused in *Harvey* because defendant was out of the room while Harvey and Elliott were applying the basket hold to G.H. and continuing to hold

his limp body in that position. The physicians who testified to their opinions as to cause of death differed as to whether G.H. vomited and then died from aspiration or whether he died from shock and vomited in the process. Under either set of facts, the trier of fact could not properly have determined beyond a reasonable doubt that G.H. had not died before defendant returned to the room and placed handcuffs on G.H. Accordingly, if defendant's conviction is upheld, that must be done upon the basis of defendant's conduct before and at the time he left the room to get the handcuffs.

██ We hold that the evidence of defendant's conduct at the time described above does support his conviction. Defendant had the supervisory responsibility over Elliott and Harvey. Regardless of the cause or time of G.H.'s death, the ferocity of the struggle was a proximate cause of the death. Defendant had participated in that struggle and applied force to G.H. and was aware or should have been aware of the condition of G.H. The trial court gave importance to the evidence of G.H.'s complaint of an inability to breathe and could have concluded G.H. made those complaints in this respect in defendant's presence. Defendant was aware that Elliott and Harvey intended to place G.H. in a basket hold. Rather than making sure that G.H. was in satisfactory condition or even warning Elliott and Harvey to check on G.H.'s condition, defendant gave tacit approval of the placing of G.H. in restraint by leaving to get handcuffs.

██ █ Here, as in *Harvey*, the State contends that the conviction in issue can be supported on an accountability theory. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2.) We declined to pass on that question in *Harvey* and need not address it here. Even if guilt cannot arise for the offense of involuntary manslaughter on an accountability theory (see *People v. Mikel* (1979), 73 Ill. App. 3d 16, 391 N.E.2d 558; contra *People v. Miscichowski* (1986), 143 Ill. App. 3d 646, 493 N.E.2d 135), guilt for involuntary manslaughter can arise for acts of omission as well as acts of commission. (*People v. Kingen* (1985), 138 Ill. App. 3d 120, 486 N.E.2d 438; *People v. Watson* (1982), 103 Ill. App. 3d 992, 431 N.E.2d 1350.) The proof of defendant's guilt here consisted of both acts of commission and omission. While acting with supervisory responsibility, he (1) engaged in the scuffle with G.H. which placed great stress on G.H., and (2) after conditions arose which should have been a warning of that great stress and after participating in the episode which placed G.H. in the condition, he left G.H. in the charge of persons he knew were intending to apply further force to G.H. without directing them to use any care or restraint.

Defendant cites to us here a number of cases which the defense raised in *Harvey*. We stand upon our explanation there as to how the situation there differs from the situation here.

We affirm the conviction and sentence.

Affirmed.

McCULLOUGH, P.J., concurs.

JUSTICE LUND, specially concurring:

I do not change my position enunciated in *People v. Harvey* (1988), 174 Ill. App. 3d 463, 528 N.E.2d 1053, *appeal denied* (1988), 123 Ill. 2d 562, and continue to disagree that Harvey's conduct was proved reckless beyond a reasonable doubt. I do agree that the combined actions of Maxwell, Harvey, and Elliott resulted in the cause of death of G.H. Maxwell was the most experienced and outranked both Elliott and Harvey. His conduct, taken with his failure to make supervisory decisions, could be found to be reckless, thus, justifying the conviction.