THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK W. LARGENT, Defendant-Appellant.

Fourth District    No. 4—01—0864

Opinion filed March 28, 2003.

TURNER, J., dissenting.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

The State charged defendant, Mark W. Largent, with two counts of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(2), (a)(3) (West 2000)), one count of aggravated criminal sexual abuse (720 ILCS 5/12—16(a)(2) (West 2000)), and one count of criminal sexual assault (720 ILCS 5/12—13(a)(1) (West 2000)). At the conclusion of the first trial, the trial court interrupted the jury's deliberations and declared a mistrial, *sua sponte*, over defendant's objection. When the State sought to retry him, defendant filed a motion to dismiss the charges on the ground of double jeopardy. The trial court denied the motion. In the second trial, a new panel of jurors found defendant guilty of one count of aggravated criminal sexual assault, one count of aggravated criminal sexual abuse, and one count of criminal sexual assault. The trial court sentenced him to imprisonment for 160 months.

Defendant appeals, arguing (1) the trial court erred in denying his motion to dismiss the charges and (2) the prosecutor made improper comments during his closing argument. Because we agree with the first contention, we do not reach the second one. We reverse the trial court's judgment.

## I. BACKGROUND

In the first trial, defendant was tried *in absentia*. Three hours and fifteen minutes into the jury's deliberations, the trial court called the jury back into the courtroom and said:

"THE COURT: Show the jury has reassembled. It's 5:15 [p.m.] Ladies and gentlemen[ ] of the jury[,] Mrs. Bergen, one of your members, had an accident in her family. I don't know how serious it was. I received a call from her husband[,] and she had to go to the hospital[.] [T]herefore, because of that[,] we had to break the panel[.] [B]ecause of that[,] the deliberations will have to cease.

I'm going to declare a mistrial on this case.

You are free to leave today.

I wish to thank you. I'm sure the attorneys wish to thank you also. These things happen. You've worked hard. You've been attentive[,] and everyone appreciates it, but because of unforeseen circumstances[,] this is what has to happen.

You're free to go[,] [i]f you would go back with Mr. Lacquet. Leave your buttons. You're free to go. Thank you. WHEREUPON, THE JURY LEFT THE COURTROOM.

THE COURT: Okay. We will be adjourned.

MR. MERLIE [(Defense Counsel)]: May I note an objection for the record, your Honor[?] [I] object to the mistrial at this point.

THE COURT: You may.

MR. MERLIE: Thank you, Your Honor.

THE COURT: Show for the record that this jury has been out for [3] hours and 15 minutes, more than enough time, in the [c]ourt's opinion, to reach a decision. However, that is not the reason why [this court declared] the mistrial. The mistrial was the emergency necessary[—]the emergency that was brought up by the accident to Mrs. Bergen's relative[,] necessitating her departure[,] and because of that[,] the matter had to mistrial."

In a memorandum in support of his motion to dismiss the charges, defendant stated: "During [the jury's] deliberations, the court advised counsel that a message was received indicating that [a juror's] mother-in-law[ ] sustained a fractured leg and was being taken to the local hospital." Defendant argued that this circumstance was not serious enough to merit the declaration of a mistrial. In the hearing on the motion to dismiss, the State argued, "There is no double jeopardy here[,] based on the hung jury." After hearing those arguments, the trial court said:

"THE COURT: Well, I think the first thing is that the record should be corrected somewhat. When the [c]ourt first heard the— about the broken leg[,] Mr. Merlie and Mr. Donahue [(the prosecutor)] were both present. I indicated in [the] presence [of them both] that I would let them [(the jurors)] continue deliberating until [5 p.m.,] at which time I would take action. So from that angle there was—it wasn't *sua sponte* and off the top of my head. It was something that in the presence of both attorneys[—]at least an indication of something going to be done was indicated at that point.

In the [c]ourt's opinion further, this was a fairly [straightforward] case. The jurors were not confronted with any highly technical questions. Based upon the jurors' comments[,] there was an indication that there would never be a verdict[,] even without the

mistrial. The jury had plenty of time to deliberate. The jury would not reach deliberation [sic][.] [I]t would be unfair and unjust, especially under the circumstances of [defendant's failure to attend the trial], to allow it to go further. Therefore, I granted the mistrial based upon medical necessity and also based upon other considerations enumerated."

The record is silent as to what the "jurors' comments" were and when the jurors made them.

In the second trial, defendant testified on his own behalf, claiming the alleged victim had consented to the sexual acts. After 2½ hours of deliberation, the jury found him guilty of the three counts. The trial court imposed its sentence in a later hearing. In his posttrial motion, defendant failed to raise the issue of double jeopardy. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

■ Citing *People v. Deems*, 81 Ill. 2d 384, 410 N.E.2d 8 (1980), defendant contends our standard of review should be *de novo*. The State cites *People v. Street*, 316 Ill. App. 3d 205, 211, 213, 735 N.E.2d 1052, 1057, 1058 (2000), in support of a deferential standard of review, arguing we should affirm the judgment unless the trial court abused its discretion. *Deems* is distinguishable. The trial court never declared a mistrial in that case. Although the supreme court discussed double jeopardy in *Deems*, it never held that *all* claims of double jeopardy required a *de novo* standard of review.

In *Street*, 316 Ill. App. 3d at 211, 735 N.E.2d at 1057, we held "that the judge failed to exercise sound judicial discretion in determining whether manifest necessity warranted declaring a mistrial." In *People v. Friason*, 22 Ill. 2d 563, 566, 177 N.E.2d 230, 232 (1961), the supreme court said, "[W]e must consider whether the trial judge abused his discretion" in declaring a mistrial on the ground of manifest necessity. Likewise, in the present case, we will ask whether the trial court used sound discretion in deciding that manifest necessity required the declaration of a mistrial.

A trial court abuses its discretion when it makes a decision that is "clearly against logic." *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 435, 711 N.E.2d 471, 474 (1999). The question is not whether we would have made the same decision if we were the trial court; rather, the question is whether the trial court made an arbitrary decision, without using "conscientious judgment, or whether, in view of all of the circumstances, the [trial] court exceeded the bounds of reason and ignored recognized principles of law so that

substantial prejudice resulted." *Bodine Electric*, 305 Ill. App. 3d at 435, 711 N.E.2d at 474.

## B. Failure To Raise Double Jeopardy in the Posttrial Motion

■ Normally, to preserve an argument for appeal from a jury trial, the defendant must make the argument in a posttrial motion. *People v. Johnson*, 250 Ill. App. 3d 887, 893, 620 N.E.2d 506, 511 (1993). Subjecting a defendant to double jeopardy would be a "[p]lain error[ ] *** affecting [a] substantial right[ ]" (134 Ill. 2d R. 615(a)). *People v. Valentine*, 122 Ill. App. 3d 782, 784, 461 N.E.2d 1388, 1389 (1984). Therefore, under Rule 615(a) (134 Ill. 2d R. 615(a)), we may consider a claim of double jeopardy even though the defendant failed to assert that claim by a posttrial motion after his or her second trial. *Valentine*, 122 Ill. App. 3d at 784, 461 N.E.2d at 1389.

## C. Double Jeopardy

### 1. *Manifest Necessity*

■ "No person shall *** be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, § 10. No person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend. V. In a jury trial, a defendant is "put in jeopardy" when the jury is impaneled and sworn. *Friason*, 22 Ill. 2d at 565, 177 N.E.2d at 231; see 720 ILCS 5/3—4(a)(3) (West 2000).

■ Once the defendant has been "put in jeopardy," the trial court may not declare a mistrial without the defendant's consent unless there is a "manifest necessity" to do so "or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, 165 (1824). The circumstances must be " 'very extraordinary and striking' "; the necessity must be "imperious." *Downum v. United States*, 372 U.S. 734, 736, 10 L. Ed. 2d 100, 102-03, 83 S. Ct. 1033, 1034 (1963), quoting *United States v. Coolidge*, 25 F. Cas. 622, 623 (C.C.D. Mass. 1815) (No. 14,858). The defendant has a right to "have a particular tribunal decide his fate" unless "a scrupulous exercise of judicial discretion leads to the conclusion that" continuing forward with the trial would defeat "the ends of public justice." *Street*, 316 Ill. App. 3d at 211, 735 N.E.2d at 1057. "[T]he trial court must balance the defendant's interest in having the trial completed in a single proceeding, reserving the possibility of obtaining an acquittal before that 'particular tribunal,' against the strength of the justification for declaring a mistrial ***." *Street*, 316 Ill. App. 3d at 211, 735 N.E.2d at 1057, quoting 5 W. LaFave, J. Israel & N. King, Criminal Procedure § 25.2(c), at 654 (2d ed. 1999).

In a case in which the trial court granted the prosecutor's motion for a mistrial, the Supreme Court said that "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Arizona v. Washington*, 434 U.S. 497, 505, 54 L. Ed. 2d 717, 728, 98 S. Ct. 824, 830 (1978). The prosecutor must shoulder the same burden, on appeal, if the trial court declared a mistrial *sua sponte* over the defendant's objection. See, *e.g.*, *United States v. Sloan*, 36 F.3d 386, 394-95 (4th Cir. 1994); *Douglas v. United States*, 488 A.2d 121, 126 (D.C. 1985); *Rodriguez v. State*, 719 So. 2d 1215, 1216-17 (Fla. App. 1998).

## 2. Sufficiency of the Record

■ The State argues that if only the record revealed what the trial judge and attorneys said to one another, during the jury's deliberations, when the judge first notified the attorneys of the telephone call he had received from Bergen's husband, we might find a sufficient basis to affirm the judgment. The conversation was off the record. The appellant has the burden of presenting a sufficiently complete record to support a claim of error. *People v. Fair*, 193 Ill. 2d 256, 264, 738 N.E.2d 500, 504 (2000).

The record need not be absolutely complete in the sense of recording every word spoken in the proceedings below; it need only be "sufficiently complete to provide for a full consideration of the facts and circumstances involved in [the] appeal." *Fiala v. Schulenberg*, 256 Ill. App. 3d 922, 924, 628 N.E.2d 660, 662 (1993). Only if the record "does not show or purport to show all the evidence on which the decision of the trial court was based" will we presume that the omitted evidence would have supported the trial court's decision. *Brandel Realty Co. v. Olson*, 159 Ill. App. 3d 230, 233, 512 N.E.2d 85, 87 (1987). For example, if the trial judge summarizes, for the record, an earlier, off-the-record event and neither party disputes the accuracy of the summary, we can deem the record sufficiently complete. *People v. Watson*, 103 Ill. App. 3d 992, 996, 431 N.E.2d 1350, 1354 (1982).

■ In denying defendant's motion to dismiss the charges, the trial court summarized the unrecorded conversation it had with the attorneys during the jury's deliberations. The trial court purported to explain, on the record, its factual basis for declaring a mistrial. It would be unreasonable to presume that the trial court omitted from its rationale any material fact. Further, in his motion to dismiss, defendant purported to state the factual basis for the declaration of a mistrial, and neither the State nor the trial court disputed the

completeness or accuracy of defendant's statement of the factual basis, other than to add that (1) the jury had spent 3 hours and 15 minutes deliberating, (2) "there was an indication," from jurors' comments, that they never would reach a verdict, and (3) defendant had not appeared. Thus, the record purports to show all of the facts on which the trial court based its declaration of a mistrial. We consider the record to be sufficiently complete to assess the merits of defendant's claim of double jeopardy.

### 3. *Sua Sponte Declaration of a Mistrial*

■ In its remarks during the hearing on defendant's motion to dismiss, the trial court disagreed with defendant that it had declared the mistrial *sua sponte*. The trial court said: "I indicated in \*\*\* [the] presence [of both attorneys] that I would let [the jury] continue deliberating until [5 p.m.,] at which time I would *take action*. \*\*\* [I indicated] *something* [was] going to be done \*\*\* at that point." (Emphases added.) Defense counsel could have assumed that the unspecified "action" the trial court intended to take was to give the jury a *Prim* instruction. See *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601 (1972); *People v. Chapman*, 194 Ill. 2d 186, 222, 743 N.E.2d 48, 70 (2000) (the purpose of a *Prim* instruction is to guide a jury having difficulty reaching a unanimous verdict). Neither the prosecutor nor the defense counsel moved for a mistrial. Defense counsel could not have acquiesced in a proposed declaration of a mistrial, because the trial court did not propose declaring a mistrial before actually declaring it. We conclude that the trial court declared the mistrial *sua sponte*.

### 4. *The Mother-in-Law's Broken Leg*

■ Although it would have been distressing to learn that one's mother-in-law had broken her leg and had been taken to the hospital, we do not think that fact, without more, was sufficient to overcome defendant's " 'valued right to have his trial completed by a particular tribunal.' " *Washington*, 434 U.S. at 503, 54 L. Ed. 2d at 727, 98 S. Ct. at 829, quoting *Wade v. Hunter*, 336 U.S. 684, 689, 93 L. Ed. 974, 978, 69 S. Ct. 834, 837 (1949). Neither the prosecutor nor the trial court acted in bad faith. Nevertheless, "[t]he 'particular tribunal' principle is implicated whenever a mistrial is declared over the defendant's objection *and without regard to the presence or absence of governmental overreaching*." (Emphasis added.) *Washington*, 434 U.S. at 508 n.25, 54 L. Ed. 2d at 730 n.25, 98 S. Ct. at 832 n.25. Defendant faced the possibility of a long term of imprisonment and stigmatization for life as a sexual predator. A leg fracture is a painful injury, but it is not normally a life-threatening injury. The mother-in-law was an adult, and because she was taken to the hospital, she evidently was receiving

the medical care she needed. The presence of her daughter-in-law at her bedside might have been comforting, but it was not highly necessary. See *Washington*, 434 U.S. at 506, 54 L. Ed. 2d at 729, 98 S. Ct. at 831 ("we assume that there are degrees of necessity[,] and we require a 'high degree' before concluding that a mistrial is appropriate"). Apparently the trial court found no urgent necessity to let Bergen leave, because it kept her in the jury room a while longer after her husband called.

### 5. Length of Time Deliberating

If the trial court decides, in its sound discretion, that the jury is hopelessly deadlocked, it may discharge the jury and order a retrial without violating the double jeopardy clauses of the Illinois and United States Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10). *People v. Wolf*, 178 Ill. App. 3d 1064, 1066, 534 N.E.2d 204, 205 (1989); *Perez*, 22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165. "In determining how long a jury should be permitted to deliberate before a mistrial is declared and the jury is discharged, no fixed time can be prescribed, and great latitude must be accorded to the trial court in the exercise of its informed discretion." *Wolf*, 178 Ill. App. 3d at 1066, 534 N.E.2d at 205.

It is unclear, from the trial court's statements on the record, that it did indeed consider the jury to be hopelessly deadlocked. When explaining to the jury why it was declaring a mistrial, the trial court did not say it considered the jury to be deadlocked. Instead, the trial court told the jury that the "accident in [Bergen's] family" was the reason for its declaration of a mistrial. Immediately afterward, the trial court told counsel that the length of the deliberations was "not the reason" for the mistrial but, rather, "the accident to *** Bergen's relative" was the reason. More than three weeks later, in the hearing on the motion to dismiss, the trial court stated that "other considerations," besides "medical necessity," had gone into its decision to declare a mistrial, namely, the possibility that the jury might never reach a verdict and the unfairness of requiring the jury, including Bergen, to deliberate longer when defendant had not even attended the trial.

The State has the heavy burden of justifying the trial court's declaration of a mistrial. In this case, it cannot do so on the basis of a deadlocked jury because the trial court apparently disavowed that basis when it declared the mistrial. If, later, the trial court said it believed the jury was deadlocked, we are left with an ambiguity that falls short of a showing of manifest necessity.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment.

Reversed.

STEIGMANN, J., concurs.

JUSTICE TURNER, dissenting:

I respectfully dissent. As noted by the majority, " '[W]e must consider whether the trial judge abused his discretion' in declaring a mistrial on the ground of manifest necessity." 337 Ill. App. 3d at 839, quoting *Friason*, 22 Ill. 2d at 566, 177 N.E.2d at 232. The majority also states a trial court abuses its discretion when it makes a decision that is " 'clearly against logic,' " and the question becomes whether "the trial court made an arbitrary decision, without using 'conscientious judgment.' " 337 Ill. App. 3d at 839, quoting *Bodine*, 305 Ill. App. 3d at 435, 711 N.E.2d at 474. The majority apparently concludes the trial court abused its discretion in finding there was a manifest necessity to declare a mistrial. I disagree.

Following a trial court's grant of a mistrial, the court of review must examine the facts of each case to properly determine the alleged double jeopardy violation. *Street*, 316 Ill. App. 3d at 211, 735 N.E.2d at 1057. The trial judge is in the best position to make an intelligent decision as to whether a mistrial should be declared. *Illinois v. Somerville*, 410 U.S. 458, 462, 35 L. Ed. 2d 425, 430, 93 S. Ct. 1066, 1069 (1973), quoting *Gori v. United States*, 367 U.S. 364, 368, 6 L. Ed. 2d 901, 904, 81 S. Ct. 1523, 1526 (1961). Further, the manifest necessity standard "do[es] not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Washington*, 434 U.S. at 506, 54 L. Ed. 2d at 728, 98 S. Ct. at 830-31. In *Perez*, the United States Supreme Court formulated the parameters for the trial court to decide whether to declare a mistrial by stating:

> "We think, that in all cases of this nature, the law has invested [c]ourts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Perez*, 22 U.S. (9 Wheat.) at 580, 6 L. Ed. at 165.

In the case *sub judice*, the trial judge learned that one of the jurors had a medical emergency—her mother-in-law had fractured her leg and was hospitalized. The trial court, in exercising its discretion and caution, allowed further deliberation to afford the jury an opportunity to reach a verdict, all the while knowing the juror would soon need to depart for the hospital. The court's exercise of discretion in determining the potential emotional distress to the affected juror and the ultimate impact on the jury as a whole must be given great deference. For example, if the court informed the juror of her mother-in-law's injury, it may very well have been difficult for the juror to focus on the task at hand and it would certainly have been a natural tendency for the juror to desire completion of deliberations as quickly as possible. Further, it would be reasonable to assume the rest of her fellow jurors were aware of her predicament, possibly compelling the entire jury to rush to judgment, for or against defendant, to allow the juror to leave for the hospital. Such a situation presents "a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *Washington*, 434 U.S. at 509, 54 L. Ed. 2d at 730, 98 S. Ct. at 832. This brand of "hurry-up justice" is not in the best interest of defendant, the State, or the public.

Clearly the trial judge did not make an arbitrary decision, without using conscientious judgment. Defendant argues, and the majority concludes, that the injury to the juror's mother-in-law was a routine fractured leg, and the juror's presence at the family bedside "was not highly necessary." 337 Ill. App. 3d at 843. These conclusions find no support in the record. The trial judge indicated he did not specifically know how serious the injury was, but he did find the injury sufficiently serious to allow the juror to go to the hospital. The record does not reveal the age or physical condition of the injured mother-in-law nor the closeness of the juror's relationship to her mother-in-law. The trial judge was in the best position to make an intelligent decision on declaring a mistrial, well within the discretionary bounds afforded it under these unique circumstances. "A trial court's failure to explicitly find manifest necessity or examine alternatives to a mistrial *** does not render the ruling constitutionally defective so long as the record provides adequate justification for the trial court's ruling." *Camden v. Circuit Court of the Second Judicial Circuit, Crawford County, Illinois*, 892 F.2d 610, 614 (7th Cir. 1989), citing *Washington*, 434 U.S. at 516-17, 54 L. Ed. 2d at 735, 98 S. Ct. at 836. Here, the trial court specifically found a medical emergency existed, and as a reviewing court, we are not in a position to conclude the trial court abused its discretion in finding the medical emergency constituted a manifest necessity to declare a mistrial.

As to defendant's argument that the prosecutor made improper statements, I also do not find reversible error.

By failing to object at trial and to include the issue in his posttrial motion, defendant did not preserve this issue for review. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). However, defendant asserts review under the plain error doctrine (134 Ill. 2d R. 615(a)). The plain error doctrine may be invoked where (1) the evidence in the case is closely balanced, or (2) to leave the error uncorrected raises a substantial risk that the accused was denied a fair trial, and the preservation of the judicial process's integrity necessitates remedying the error. *People v. Shaw*, 186 Ill. 2d 301, 326-27, 713 N.E.2d 1161, 1175 (1998).

Defendant objects to the prosecutor's following statements:

"Now, they will have you believe that all of this was consensual on his part and I'll deal with that in a moment. *Her testimony, however, her demeanor and all credibility and believability in truth [sic] she was raped by the defendant.*

Now, we have her testimony and it is, I think, to you *very credible.*

\* \* \*

We have a young girl who is testifying *very truthfully, honestly.* If you look at how she reacted to that whole process, wasn't made up, was not made up at all." (Emphases added.)

Specifically, he asserts the prosecutor improperly bolstered the witness's credibility with the above statements.

While a prosecutor personally vouching for a witness's credibility or expressing a personal opinion is improper, a prosecutor can comment on a witness's credibility and challenge the defendant's credibility and defense theory when such remarks are based on facts in evidence or reasonable inferences drawn therefrom. *People v. Pope*, 284 Ill. App. 3d 695, 706, 672 N.E.2d 1321, 1328 (1996). This court has expressly rejected the notion that a prosecutor improperly bolsters a witness's credibility if the jury has to infer the prosecutor is doing so from his comments. Thus, we held for a prosecutor's closing argument to be improper, he must have explicitly stated that he was asserting his personal views. *Pope*, 284 Ill. App. 3d at 707, 672 N.E.2d at 1329.

Defendant argues the facts of this case are similar to *People v. Lee*, 229 Ill. App. 3d 254, 260, 593 N.E.2d 800, 804 (1992), where the First District held a prosecutor's statement was improper and prejudicial. In *Lee*, 229 Ill. App. 3d at 260, 593 N.E.2d at 804, the prosecutor stated that a witness was " 'extremely honest in [his] humble opinion.' "

Here, the prosecutor does not explicitly state "this is my personal

view" (see *Pope*, 284 Ill. App. 3d at 707, 672 N.E.2d at 1329), or that it is his opinion the witness was credible (see *Lee*, 229 Ill. App. 3d at 260, 593 N.E.2d at 804). Here, any bolstering of the witness's credibility by the prosecutor was implied and thus does not constitute an error. While the prosecutor at one point said "I think," the use of those words does not *per se* constitute error. See *People v. Baker*, 195 Ill. App. 3d 785, 788, 552 N.E.2d 421, 423 (1990), *overruled on other grounds by People v. Love*, 177 Ill. 2d 550, 564, 687 N.E.2d 32, 39 (1997).

Assuming *arguendo* that the prosecutor's statements were improper, plain error did not occur because the evidence was not closely balanced and the statements did not create a substantial risk that defendant was denied a fair trial.

Here, the victim, defendant's stepdaughter, testified that during the early morning of May 23, 2000, defendant put his hand over her mouth, pulled her into the bedroom, threw her on the bed, and pinned her down. As she struggled with him, he stuffed a pillowcase in her mouth. He then put his hand inside her boxer shorts and inserted his finger into her vagina. When she again attempted to get away, he threatened to punch her. After lifting up her shirt and licking her breasts, he pulled her by the hair out of the bedroom and out of the house.

At that point, defendant made her get into a vehicle she did not recognize and ordered her to drive him to his vehicle. Defendant directed her to a trailer where he forced her inside and then kicked her feet out from underneath her. She fell to the ground, and he ripped her clothes off her. Defendant then took his pants off and told her she was going to perform oral sex on him. He then forced his penis into her mouth, and she bit it. He then punched her in the face several times. He continued to attempt to force oral and vaginal sex upon her but, when he was unable to perform, he left the room and the victim put on her clothes.

When he returned, he told her things had gone too far and he would have to kill her. She begged for her life, and eventually he threw the car keys at her. At that point, she ran out of the trailer to the car and sped away. She came upon a police officer, pulled over, and told him what happened. A second officer arrived, and she again stated what happened.

Other testimony substantiated the victim's account. Three members of the Vermilion County sheriff's department all testified that they observed bruises above the victim's left jaw line that looked like knuckle marks. Deputy sheriff Dennis Gardener testified that on May 23, 2000, he had stopped to assist a car that had broken down

when he noticed a car approaching at a high rate of speed. The victim exited the car, screaming that she had been raped. According to Gardener she was hysterical, shaking uncontrollably, crying very hard, and talking almost incoherently. The second officer on the scene, David Harrold, also testified that when he arrived, the victim was still very upset, crying, and trembling.

Moreover, the victim testified that defendant had molested her on a prior occasion and had made other attempts. Her mother testified that in the past, her daughter had complained that defendant molested her and had come into her bedroom at night.

Defendant testified the victim was asking him questions about his activities and voluntarily came into the bedroom. When she sat down on the bed, they playfully wrestled and nothing sexual occurred. She then offered to give him a ride to pick up his car. They got in a car that belonged to his friend with the victim driving. Once they reached his car, she turned the car off and voluntarily entered the nearby residence with him. According to his testimony, she became friendly with him and she did not resist when he removed her clothing. He then took off his clothing. They both tried to engage in oral sex but he could not obtain an erection. Defendant stated she engaged in the activities willingly. According to defendant, the victim was upset when she left because she let things go too far.

Defendant's story has serious credibility issues. The victim testified she had not liked defendant since he began molesting her in the sixth grade. Defendant himself agreed that his stepdaughter did not like him. After the victim left the residence, defendant climbed an observation tower and threatened to commit suicide. The first officer on the scene testified that he asked defendant why he was standing on the railing, and defendant responded that the officer knew what he had just done and that was the reason the officer was there.

Additionally, on May 24, 2000, defendant gave a statement to the police that had some inconsistencies with his trial testimony. Todd Damilano, an investigator for the Vermilion County sheriff's department, testified that defendant stated he had begun consuming alcohol and crack cocaine the evening of May 22, 2000, which continued to the morning of May 23, 2000. Defendant stated he was talking with the victim when "things got out of hand," and he dragged the victim into the master bedroom. They wrestled, but no sexual contact occurred at home. He then had the victim drive him to his friend's residence. When he and the victim arrived, "things really got out of hand." He thought the victim wanted him, but he "could not get it up." The victim asked to leave, and he let her go.

Accordingly, I would affirm the trial court's judgment.