14 April 2000

NO. 4-98-0350

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

) Macon County

TERRY L. FINLEY, ) No. 97CF829

Defendant-Appellant. )

) Honorable

) John K. Greanias,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the court: 

Defendant, Terry L. Finley, was convicted of attempt (first degree murder of a police officer) and sentenced to the maximum term of 80 years' imprisonment.  720 ILCS 5/8-4(a), (c)(1), 9-1(a)(1), (b)(1) (West 1996).  Defendant appeals, claiming (1) error in an improper reference by a State witness to his refusal to take a polygraph examination, (2) his trial counsel was ineffective for failing to object to the admission of a weapon with no nexus to defendant, (3) the statute under which he was sentenced violated the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)), and (4) his sentence is excessive.  We affirm as modified and remand with directions.    

Decatur police officer Neal Cline testified he stopped defendant's car on June 21, 1997, at about 1:45 a.m.  As the car slowed to a stop, defendant, the driver, opened his door and began to get out.  Cline ordered defendant back into the car and drew his weapon.  After Cline could see the hands of defendant and defendant's two female passengers, Cline holstered his weapon and snapped the holster shut.  Defendant told Cline he had failed to pull over immediately because he had not seen Cline.  Cline ordered defendant to exit the car and place his hands on the roof.  Instead, defendant exited the car and faced Cline with his hands raised.  Defendant then stepped back, lifted his shirt, and pulled a small chrome or silver handgun from his pants.  Defen

dant pointed the gun at Cline's stomach and pulled the trigger, but the gun did not fire.  By the time Cline got his gun out, defendant had started to run.  

Cline chased defendant across Crea Street, yelling for him to stop.  Cline fired two shots that missed defendant, but after a third shot, defendant fell to the ground and then ran behind the house at 355 South Crea Street.  When additional officers arrived, they searched the area but neither defendant nor defendant's gun was recovered.  Defendant turned up at St. Mary's Hospital later in the morning with a gunshot wound to the thigh, giving the name of Charles Thompson.  When questioned, defendant gave conflicting and vague accounts of how he had been shot.  Nine days after the incident, Decatur firemen extinguish

ing a fire found a chrome-plated pistol about two blocks north of 355 South Crea street.  The only fingerprint, on the interior of the gun, did not match defendant's.  

One of the passengers in defendant's car, Rosemarie Banks, signed a statement at the police station that she saw defendant put a gun in his rear pants pocket as he was getting out of the car.  At trial, she testified that she did not see a gun but police coerced her into saying that she did.  The other passenger, Coretta Pearson, testified that, although she did not see anything, she heard Cline say either "Oh my god," or "oh damn it," followed by, "he has a gun."     

Officer Jon Beggs interviewed defendant after his release from the hospital on June 21, about 11:30 a.m.  Defendant said he ran from Cline because he did not have his driver's license and was fearful of being arrested and that Cline shot him as he ran between some houses on South Crea.  In cross-examining Beggs, defense counsel asked the following questions:

"Q.  Okay. *** [A]t any time during the 

interview, did he act like he was sleepy or 

going to go to sleep?

A.  Yes, he did.

Q.  When was that?  

A.  Towards the conclusion of the inter-

view--uh--we started discussing the--uh--fact 

of him possibly taking a polygraph exam.  At 

that point, he started to, basically, nod 

off--uh--when he seemed to rouse back around.  

Uh--he just finally told me he wasn't inter-

ested in taking one at that point."         

After completing cross-examination, defense counsel, during a conference in chambers, made a motion for mistrial because of the polygraph examination reference.  The trial court denied the motion and instructed the jury that (1) lie detector tests, polygraph tests, are not sufficiently reliable "for a jury to decide any issue in the case"; (2) "evidence regarding poly

graphs, taking one, refusing to take one, anything to do with polygraph tests, is just not admissible"; (3) such evidence did not "have sufficient proof ability as evidence to be of any assistance to the jury"; and (4) Beggs' statements regarding the polygraph were accordingly stricken, and the jury was to disregard them.  

The general rule in Illinois is to preclude introduc

tion of evidence regarding polygraph examinations and the results of those tests.  
People v. Jefferson
, 184 Ill. 2d 486, 492, 705 N.E.2d 56, 59 (1998).  The problems with polygraph evidence are twofold.  First, polygraphy is not sufficiently reliable to establish guilt or innocence.  Second, the quasi-scientific nature of the test may lead a trier of fact to give the evidence undue weight, notwithstanding its lack of reliability.  
Jeffer

son
, 184 Ill. 2d at 493, 705 N.E.2d at 60.  

In 
Jefferson
, the defendant sought to explain her inculpatory statement with testimony that the police had said her daughter (the victim) had only a few hours to live, and if she signed the statement she could see her daughter, talk to her parents, and go home.  In response the State, after a discussion with the trial judge outside the jury's presence, introduced testimony that defendant had agreed to take a polygraph test, a test was scheduled, and about 5 or 10 minutes later defendant told the officers that she wanted to tell the truth about what had happened.  Despite the general rule of exclusion, the supreme court held the evidence became admissible to explain the circum

stances surrounding the defendant's inculpatory statement to police, after the defendant raised the contention in her testi

mony that her statement was induced by promises of lenient treatment.  
Jefferson
, 184 Ill. 2d at 496, 705 N.E.2d at 61; see also 
People v. Jackson
, 198 Ill. App. 3d 831, 846, 556 N.E.2d 619, 629 (1990) (evidence that defendant failed polygraph exami

nation admissible to show that failure motivated his confession, rather than threats by the police); 
People v. Melock
, 149 Ill. 2d 423, 465,  599 N.E.2d 941, 960 (1992) (although 
Jackson
 "gives us pause" (
Melock
, 149 Ill. 2d at 463, 599 N.E.2d at 959), defendant was permitted to show polygraph examiner deceived him regarding his test results, leading him to confess).    

It is also improper to introduce the results of a polygraph examination conducted on a witness other than the defendant.  
People v. Gard
, 158 Ill. 2d 191, 205, 632 N.E.2d 1026, 1033 (1994) (plain error even though evidence was not closely balanced, defendant was partially responsible for admis

sion, and defendant did not object).  It is improper to refer to the fact that defendant was offered a polygraph test, or that he refused one, even without disclosing the results of any examina

tion.  
People v. Eickhoff
, 
129 Ill. App. 3d 99, 103, 471 N.E.2d 1066, 1069 (1984).  In 
People v. Lewis
, 269 Ill. App. 3d 523, 646 N.E.2d 305 (1995), a police officer was asked about his interview of the victim.  In response to the question, "And after you did that what did you do," the officer replied, "She agreed to take a polygraph exam."  
Lewis
, 269 Ill. App. 3d at 526, 646 N.E.2d at 307.  We reversed and remanded, characterizing the situation as one where "we are confronted with the gratuitous, volunteered testimony of an 
experienced
 police officer, who flags to the jury's attention the fact that the State's key witness 'agreed to take a polygraph exam.'" (Emphasis in original.)  
Lewis
, 269 Ill. App. 3d at 527, 646 N.E.2d at 308.  

Is there a 
per
 
se
 rule requiring reversal in all cases where a polygraph examination has been a mentioned?  Justices Miller and Heiple dissented from 
Gard
 because of their concern that decision created a 
per
 
se
 rule.  
Gard
, 158 Ill. 2d at 206, 208-09, 632 N.E.2d at 1033-35 (Miller, J., dissenting, and Heiple, J., dissenting).  Justices Miller and Heiple were in the majority, however, in the most recent polygraph case, 
Jefferson
.  In 
Gard
, the results of the test were admitted; 
Jefferson
 and the present case involve only a reference to a test.  In 
Lewis
, the case most like this case on its facts, the trial court immedi

ately sustained an objection, struck the testimony, and asked the jury to disregard it.  Nevertheless, we concluded that defendant had been denied a fair trial, noting the extensive conflict between the witness who "'agreed to take a polygraph exam'" and the statements of defendant.  
Lewis
, 269 Ill. App. 3d at 527, 646 N.E.2d at 308; see also 
People v. Britt
, 265 Ill. App. 3d 129, 148, 638 N.E.2d 282, 295 (1994) (during State's questioning, accomplice indicated that he had taken a polygraph; this court held that determination of prejudicial impact on jury lies within trial court's sound discretion).  We conclude there is no 
per
 
se
 rule in the facts of the present case, and we must determine whether defendant was denied a fair trial.   

Significant differences exist between the present case and 
Lewis
.  In 
Lewis
, the State profited from the indication that its principal witness had passed a polygraph test.  In the present case it is not clear how defendant was harmed by the evidence that he refused to take a polygraph test.  In 
Doyle v. Ohio
, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976), the Supreme Court held that the use of a defendant's silence for impeachment purposes violated the due process clause of the fourteenth amendment.  Nevertheless, a 
Doyle
 violation can constitute harmless error where, for example, the trial court sustains an objection to the question and advises the jury to ignore the answer and no further reference to or argument of defendant's postarrest silence is made.  
People v. Patterson
, 154 Ill. 2d 414, 466-67, 610 N.E.2d 16, 40 (1992).  Defense counsel argued to the jury here that defendant should be given credit for voluntarily speaking to the police.  After the court's instruc

tion the jury would logically conclude that defendant was willing to speak about the incident, but was not interested in submitting to an unreliable polygraph examination.  

Other differences exist between this case and 
Lewis
.  A more thorough instruction was given here.  In 
Lewis
, we were concerned with the "gratuitous, volunteered testimony of an 
experienced
 police officer."  (Emphasis in original.)  
Lewis
, 269 Ill. App. 3d at 527, 646 N.E.2d at 308.  In the present case, nothing indicates that Beggs was engaged in any type of miscon

duct.  Beggs' answer was a fair response to the question asked:  when during the interview did defendant act like he was sleepy?  That question could only be answered by referring to the ques

tions then being asked.  During closing argument, defense counsel discussed inconsistent statements made by defendant and how, when defendant got tired, he would say "whatever" or "you know," instead of saying that he did not want to talk anymore.  Defense counsel seemed to indicate that sometimes defendant "went to sleep" instead of answering the question.  If going to sleep was a device to avoid answering a question, it was important to know what question was being answered.  

Lewis
 stated that a prosecutor has a duty to tell State witnesses never to mention polygraph examinations during their testimony.  
Lewis
, 269 Ill. App. 3d at 527, 646 N.E.2d at 308.  That sometimes can be difficult to do.  What response should the witness make if defense counsel specifically asks whether defen

dant was requested to submit to a polygraph examination?  What response should the witness make if defense counsel asks whether the prosecutor told the witness not to mention certain facts during cross-examination?  

In this case, because there was no showing of bad faith on the part of the witness, because the testimony was stricken and an appropriate instruction was given, and because there was no showing of substantial prejudice to the defendant, the trial court did not abuse its discretion in denying a mistrial.  See 
Patterson
, 154 Ill. 2d at 466-67, 610 N.E.2d at 40.  

Defendant next argues that the recovered pistol had an insufficient nexus to the offense and defense counsel was inef

fective for failing to object to its admission.  Cline testified the pistol was very similar to the one he saw, and other evidence indicated the pistol was found in an area accessible to defendant at the time of the offense.  Evidence is admissible if it is relevant; in a criminal case, the identity of items of evidence need not be proved beyond a reasonable doubt.  See 1 J. Strong, McCormick on Evidence §185, at 776 (4th
 ed. 1992).  When evidence suggests that the perpetrator possessed a weapon at the time of the offense, a similar weapon that the evidence somehow connects to the defendant may be admitted into evidence even though not identified as the weapon used.  
People v. Lee
, 242 Ill. App. 3d 40, 43, 610 N.E.2d 727, 729 (1993).  Here the pistol was relevant because it answers defendant's possible question, how could I have tried to shoot the officer when there was not any gun?  

Defendant next argues that Public Act 88-680 (Pub. Act 88-680, art. 35, §35-5, eff. January 1, 1995 (1994 Ill. Laws 2750, 2782-83)), which increased the penalties for attempt (first degree murder of a police officer), violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)).  The supreme court has recently ruled on this issue, holding that Public Act 88-680 does violate the single subject rule.  
People v. Cervantes
, 189 Ill. 2d 80, 91, 723 N.E.2d 265, 270 (1999). 

Defendant's final argument is that the trial court abused its discretion in sentencing him to 80 years' imprison

ment.  The sentence was within the statutory range for attempt (first degree murder of a peace officer) as amended by Public Act 88-680, a minimum of 20 years and a maximum of 80 years.  720 ILCS 5/8-4(c)(1) (West 1996).  The trial court is the proper forum for sentencing and its decisions in regard to sentencing are entitled to great deference.  
People v. Coleman
, 166 Ill. 2d 247, 258, 652 N.E.2d 322, 327 (1995).  Where it is claimed that a sentence within statutory limits is excessive, the sentence should not be disturbed unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.  
People v. Cabrera
, 116 Ill. 2d 474, 493-94, 508 N.E.2d 708, 716 (1987).  Although defense counsel argued Cline was not injured and that warranted a lesser sen

tence, the fact Cline was not injured was providence and not due to any effort on the part of defendant.  The trial court noted that defendant had a long history of criminal convictions, defendant was a very dangerous person, and there was a need for deterrence.  Taking into account defendant's conduct and his history of criminality, the 80-year sentence was not dispropor

tionate.  However, we reduce it to 60 years, the maximum sentence statutorily available in view of 
Cervantes
.  155 Ill. 2d R. 366(a)(1). 

For the foregoing reasons, the judgment and sentence of the trial court are affirmed as modified and the cause is re

manded for issuance of an amended judgment of sentence.  

Affirmed as modified; cause remanded with directions. 

GARMAN, J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

Evidence about polygraph testing is generally inadmis

sible in courts in Illinois.  
Jefferson
, 184 Ill. 2d at 497, 705 N.E.2d at 62.  In addition, the prosecutor had a duty to tell State witnesses never to mention polygraph examinations.  
Lewis
, 269 Ill. App. 3d at 527, 646 N.E.2d at 308.

I do not agree with the majority's belief that to so admonish the witnesses is difficult.  The majority states:

"That sometimes can be difficult to do.  What response should the witness make if defense counsel specifically asks whether defendant was requested to submit to a polygraph exami

nation?  What response should the witness make if defense counsel asks whether the prosecutor told the witness not to mention certain facts during cross-examination?"  Slip op. at 8.

Certainly no defense attorney would elicit testimony about a polygraph refusal; and if defense counsel were to ask whether the prosecutor told the witnesses not to mention certain facts, he would open the door to the admission of that refusal, as well as possible sanctions from the court.  

However, I agree with the majority that no 
per
 
se
 rule exists to ban the admission of polygraph evidence.  In this case, Beggs' polygraph statement was responsive to defense counsel's question, bad faith was not shown, and the trial court did all it could to cure any potential prejudice by striking the testimony and giving the appropriate cautionary instruction to the jury.  

Moreover, Beggs' statement did not concern an absolute refusal, but rather described defendant's physical condition at the police station after a hospital visit.  Defense counsel sought to establish and did establish defendant's condition of ill-being, his cooperativeness with police, and his consistent denial of gun possession.  Beggs described a very tired man who was falling asleep and finally said he wasn't interested in taking a polygraph at that time, presumably because he was too tired.  This reference does not directly impinge on defendant's credibility.  Nor was this information elicited in contravention of a court's ruling on a motion 
in
 
limine
 since no such motion was made.

This testimony was stricken and the jury admonished as follows:

"Ladies and Gentlemen *** Officer Beggs, in his testimony, made reference to a polygraph examination which I'm sure you know that's a lie detector test.

It is the law of Illinois that the lie detector tests or polygraph tests are not sufficiently reliable to be used to--uh--for a [j]ury to decide any issue in the case.  So, evidence regarding polygraphs, taking one, refusing to take one, anything to do with polygraph tests, is just not admissible.  It doesn't have sufficient proof ability as evidence to be of any assistance to the [j]ury.

Therefore, I am striking Officer Beggs' statements regarding the polygraph and in

structing you to disregard those in this case."

The trial court did its best to unring the bell--if in fact a bell was rung.  See 
People v. Keene
, 169 Ill. 2d 1, 20, 660 N.E.2d 901, 911 (1995); 
People v. Ranstrom
, 304 Ill. App. 3d 664, 674-75, 710 N.E.2d 61, 69 (1999); 
People v. Buress
, 259 Ill. App. 3d 217, 224, 630 N.E.2d 1143, 1147 (1994).  The defendant cannot show the jury was so influenced and prejudiced that he did not receive a fair trial.  Moreover, the evidence of defendant's guilt was so overwhelming in this case that defendant cannot now claim that his "guilt could be directly inferred from the poly

graph testimony."  This court cannot say that the trial court abused its discretion in denying a mistrial.  The trial court determined that this testimony had no prejudicial effect on the jury.  Therefore, I specially concur in the majority's affirmance.