THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD C. DAHLBERG, Defendant-Appellant.

Second District    No. 2—03—0784

Opinion filed February 9, 2005.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paul Benjamin Linton, of Northbrook, for the People.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

On November 18, 2002, the defendant, Richard Dahlberg, was charged with two counts of domestic battery (720 ILCS 5/12—3.2(a)(1), (a)(2) (West 2002)). During a jury trial, the trial court granted the State's motion for a mistrial and rescheduled the trial for the next day. Prior to the commencement of the new trial, the defendant moved to dismiss the charges based on the constitutional prohibition against double jeopardy. On July 9, 2003, the trial court denied the motion. The defendant appeals from this order. We reverse.

The defendant was charged with two misdemeanor counts of domestic battery, based on an incident in which he allegedly pushed his girlfriend, Stephanie Paull. A public defender was appointed to represent the defendant. On July 3, 2002, defense counsel filed a notice indicating that he intended to raise a claim of self-defense. A jury trial commenced on July 7, 2003. Assistant Public Defenders John Casey and Brett Cummins appeared for the defendant. At the outset, the trial court heard oral motions *in limine* from both parties.

310

The case proceeded to jury selection. When Casey asked the prospective jurors whether any of them believed it would be acceptable "to call police falsely or to use the police department as a weapon against somebody," the State objected and asked for a sidebar. Following the sidebar, which was not transcribed, Casey asked the prospective jurors if they thought it would be possible that a person who called the police regarding a domestic battery may actually have been the abuser, seeking to avoid prosecution by calling the police first. The State did not object to that question. Jury selection concluded that day.

The trial proceeded on July 8, 2003. The State's first witness was the alleged victim, Stephanie Paull. The victim testified about her relationship with the defendant and provided her version of the incident that led to the charges in this case. On cross-examination, Casey questioned the victim about the incident and then asked her if she knew Keith Anderson, Bill Kubnick, and James Nagle. The victim admitted knowing all three men. The State objected on the grounds of relevance. Before the trial court responded to the objection, Casey asked for "a little leeway." The trial court allowed Casey to proceed "subject to [a] motion to strike." At that point, Casey asked the victim, "You filed domestic battery charges and asked for orders of protection against all these gentlemen?" Before the victim could respond, the State again objected. The trial court sustained the objection and removed the jury from the courtroom.

After the jury exited, the following exchange occurred:

"MS. ALEX [Assistant State's Attorney]: Judge, at this time the State would be asking for a mistrial.

MR. CASEY: Your Honor, this goes to *modus operandi*. We're alleging that she's using the—

THE COURT: This should have been the subject of a motion *in limine*, Mr. Casey. These things do not get mentioned unless they are criminal cases. Orders of protection are not relevant to this. They should have been. I am declaring a mistrial at this time. I will go and speak to the jury right now.

And we will start over again tomorrow. And we will pick the jury in the morning, and you'll find someone else to do your court calls because we have a doctor coming in tomorrow afternoon, and we're going to take him out of order, and we will finish the case. And if you aren't prepared, Mr. Padish [the Acting Public Defender] will hear about it."

Thereafter, the trial judge went to the jury room to dismiss the jurors. No further proceedings were held on July 8.

On July 9, 2003, the defendant filed a motion to dismiss the prosecution of his case on the grounds of former jeopardy, alleging that the line of cross-examination was proper and that there was no

manifest necessity for a mistrial. When the trial court called the case on July 9, Cummins advised the court of the motion to dismiss. The trial court then stated:

> "THE COURT: All right. *** [W]e're going to *** have a full argument on the motion. *** I don't believe double jeopardy has attached. That should have been the subject of the motion *in limine*.
>
> I did talk to the jurors. They said it was highly prejudicial and that was why, even if it was relevant, the prejudicial value outweighed the probative, and the Court does have the right to not admit that evidence, and it was so highly prejudicial that it should have absolutely been the subject of a motion *in limine*."

The trial court further clarified that the mistrial was granted not because the evidence was irrelevant, but because it was highly prejudicial.

Casey argued that the proposed line of cross-examination was relevant and that the court did not allow the defense to make an offer of proof as to what the evidence would show. He believed the cross-examination was relevant to the defendant's claim of self-defense. Casey acknowledged that the evidence would be prejudicial but argued that it would be probative regarding *modus operandi*, bias, and credibility. The cross-examination would have shown that the victim had made false reports in the past and had been the defendant in a matter where she abused a former boyfriend. Casey was attempting to show that the victim has a propensity to file domestic battery reports as a way to get out of her relationships. Additionally, Casey argued that the victim's tendency to file false reports would discount her credibility. Finally, Casey argued that even if the trial court found the cross-examination to be improper, there were less severe remedies than a mistrial. Casey argued that the trial court could have sustained the State's objection and instructed the jury to disregard the question. Casey noted that he had not gone further than asking the victim if she had filed charges against the other men.

The State argued that it was improper to impeach the victim with specific acts and that the defense should have filed a motion *in limine* seeking permission to present the evidence or at least made an offer of proof outside the presence of the jury. The State also argued that the defendant had acquiesced to the mistrial by not objecting to it. Casey replied that the defense had no opportunity to object or make an offer of proof before the mistrial was declared.

Following argument, the trial court denied the motion to dismiss. The trial court stated that the public defender's office had successfully presented motions *in limine* to admit similar evidence in prior cases. However, the trial court was extremely surprised by the line of

questioning and believed it was manifestly prejudicial. Based on the looks on their faces, the trial court believed that the assistant State's Attorneys were also surprised. The trial court did not believe that a limiting instruction would have cured the prejudice. After the trial court made its ruling, defense counsel indicated that the defendant would file an interlocutory appeal. Thereafter, the defendant filed a timely notice of appeal.

On appeal, the defendant argues that because the mistrial was granted without the defendant's consent and in the absence of a manifest necessity, any further prosecution of the defendant would violate the constitutional prohibition against double jeopardy. The fifth amendment to the United States Constitution states in relevant part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. The same principles are embodied in the Illinois Constitution. See Ill. Const. 1970, art. I, § 10. These provisions are based on the notion that, with all of its resources and power, the State should not be allowed multiple attempts to convict a person of an alleged offense. *People v. Bagley*, 338 Ill. App. 3d 978, 980-81 (2003).

■ The constitutional protection against double jeopardy attaches after the jury is selected and sworn. See 720 ILCS 5/3—4(a)(3) (West 2002); *Bagley*, 338 Ill. App. 3d at 981. A defendant who requests or consents to a mistrial is presumed to have deliberately elected to forgo a determination of guilt or innocence before the jury seated at that time. *Bagley*, 338 Ill. App. 3d at 981. However, where a court acting without the defendant's consent declares a mistrial, the court necessarily deprives the defendant of his valued right to have a particular jury decide his fate. *Bagley*, 338 Ill. App. 3d at 981. This does not necessarily preclude a second trial, because a defendant's right to have his trial completed by a particular jury is in some instances subordinate to the public's interest in fair trials designed to end in just judgments. *People v. Sanders*, 342 Ill. App. 3d 374, 378 (2003). When the court declares a mistrial without the defendant's consent, the State should be allowed to retry the defendant only if there was a manifest necessity for declaring the mistrial. *Bagley*, 338 Ill. App. 3d at 981. Accordingly, reprosecution of a defendant following the declaration of a mistrial is constitutionally permissible if (1) the mistrial was attributable to the defendant by virtue of his motion or consent; or (2) the mistrial was warranted by "manifest necessity." *People v. Hill*, 353 Ill. App. 3d 961, 967-68 (2004).

■ Contrary to the defendant's argument on appeal, the State argues that the defendant can be retried because he impliedly consented to the mistrial. Our supreme court has held that a

defendant's failure to object to a mistrial, despite having an adequate opportunity to do so, and his course of conduct after the declaration of the mistrial can constitute acquiescence to the mistrial. *People v. Camden*, 115 Ill. 2d 369, 378-79 (1987). The State suggests that the defendant had an adequate opportunity to object to the mistrial before the jury was actually discharged. We disagree.

■ In the present case, the defendant did not have an adequate opportunity to object to the trial court's declaration of a mistrial. After the State motioned for a mistrial, defense counsel attempted to explain the gist of his cross-examination, but the trial court cut him off and reprimanded him for not addressing it during a pretrial motion *in limine*. Thereafter, the trial judge immediately declared a mistrial and informed the parties that she was leaving the bench "right now" to discharge the jury. Under these circumstances, we are unable to conclude that the defendant impliedly consented to the mistrial.

The cases the State cites are distinguishable from the present case. In *People v. Escobar*, 168 Ill. App. 3d 30 (1988), the trial judge declared a mistrial because the jury was unable to reach a verdict. *Escobar*, 168 Ill. App. 3d at 36. The defendant argued that he did not have an opportunity to make a timely objection to the mistrial. *Escobar*, 168 Ill. App. 3d at 39. Rather, the trial court *sua sponte* declared the mistrial and, immediately after the declaration, ordered a recess before defense counsel could make any objections. *Escobar*, 168 Ill. App. 3d at 39. Nonetheless, the reviewing court determined that defense counsel had ample time to raise a double jeopardy objection before the trial judge declared a mistrial. *Escobar*, 168 Ill. App. 3d at 39. Before the jury was called into the courtroom, the trial judge stated that he was going to declare a mistrial. *Escobar*, 168 Ill. App. 3d at 39. The jurors were then brought out. *Escobar*, 168 Ill. App. 3d at 39. The trial judge then declared a mistrial. *Escobar*, 168 Ill. App. 3d at 39. The reviewing court determined that defense counsel could have raised his double jeopardy objection during this interval. *Escobar*, 168 Ill. App. 3d at 39. As such, the reviewing court concluded that the defendant's conduct constituted acquiescence to the mistrial. *Escobar*, 168 Ill. App. 3d at 39.

In *Camden*, a mistrial was declared after the trial court learned that one of the jurors had made comments, which were overheard by other members of the jury, about his inability to render an impartial verdict because of his prior drinking problem. *Camden*, 115 Ill. 2d at 373. Upon learning of the comments, the trial court conducted a hearing and summoned the juror to testify. *Camden*, 115 Ill. 2d at 373. The trial court asked defense counsel if he wished to interrogate the juror, but defense counsel declined and asked for a recess to confer with the

prosecutor. *Camden*, 115 Ill. 2d at 374. Following the recess, the trial court declared a mistrial, continued the matter for further trial setting, and discharged the jury. *Camden*, 115 Ill. 2d at 374-75. Upon review, the supreme court determined that defense counsel had two opportunities to object to the mistrial. *Camden*, 115 Ill. 2d at 377. First, during the interrogation of the juror and, second, after the trial court declared the mistrial but before it actually discharged the jury, when the trial court stated: " 'and this cause will be continued for a further trial setting.' " *Camden*, 115 Ill. 2d at 378. The supreme court determined that, at that point, defense counsel could have requested a sidebar and objected to the mistrial outside the presence of the jury. *Camden*, 115 Ill. 2d at 378. However, defense counsel failed to object and simply thanked the jury. *Camden*, 115 Ill. 2d at 375. The supreme court held that this course of conduct amounted to acquiescence in the result. *Camden*, 115 Ill. 2d at 378-79.

The present case is distinguishable from both *Escobar* and *Camden*. In *Escobar*, the defendant had time to object to the mistrial during the interval when the jury was being brought back into the courtroom. Additionally, defense counsel in *Camden* could have objected after the trial court continued the case, but instead, he simply thanked the jury. In the present case, the defendant did not have a chance to object to the ruling before the trial judge left the bench to dismiss the jury. When the State moved for a mistrial, the trial judge did not let defense counsel respond. Instead, she declared a mistrial, reprimanded defense counsel, and immediately left the bench to discharge the jury. Because defense counsel filed the double jeopardy motion at his next available opportunity, the next morning, we are unable to conclude that the defendant impliedly consented to the mistrial.

■ The defendant next argues that the mistrial was improper because there was not a manifest necessity to declare a mistrial. We agree. The manifest necessity standard is a command to the trial court not to foreclose the defendant's right to have a particular tribunal decide his fate until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by continuing the proceedings. *Bagley*, 338 Ill. App. 3d at 982. The Supreme Court has interpreted manifest necessity to mean a "high degree" of necessity. *Arizona v. Washington*, 434 U.S. 497, 505, 54 L. Ed. 2d 717, 728, 98 S. Ct. 824, 830 (1978). Reviewing courts have an obligation to satisfy themselves that the trial judge exercised "sound discretion" in declaring a mistrial. *Washington*, 434 U.S. at 514, 54 L. Ed. 2d at 733, 98 S. Ct. at 835. The trial court must carefully consider all of the circumstances and any reasonable alternatives to declaring a mistrial. *Bagley*, 338 Ill. App. 3d at 982. An order declaring a mistrial

cannot be condoned where the trial court acted "irrationally or irresponsibly." *Washington*, 434 U.S. at 514, 54 L. Ed. 2d at 734, 98 S. Ct. at 835. Whether the trial judge gave counsel an opportunity to be heard regarding a mistrial is of major importance, as is "the amount of time devoted to the mistrial decision." *Brady v. Samaha*, 667 F.2d 224, 229 (1st Cir. 1981). A hasty decision, reflected by a rapid sequence of events culminating in a declaration of a mistrial, tends to indicate insufficient concern for the defendant's constitutional rights. *Brady*, 667 F.2d at 229. The question concerning whether manifest necessity warranted a mistrial is determined by the facts of each case. *People v. LaFond*, 343 Ill. App. 3d 981, 985 (2003). Whether to declare a mistrial is a matter within the sound discretion of the trial court, and double jeopardy concerns do not arise unless that discretion is abused. *Bagley*, 338 Ill. App. 3d at 982.

In *Washington*, defense counsel aired improper and highly prejudicial evidence before the jury. *Washington*, 434 U.S. at 514-15, 54 L. Ed. 2d at 734, 98 S. Ct. at 835. The Supreme Court determined that the trial judge did not act precipitately in response to the prosecutor's request for a mistrial. *Washington*, 434 U.S. at 515, 54 L. Ed. 2d at 734, 98 S. Ct. at 835. Rather, the trial judge evinced a concern for the possible double jeopardy consequences of an erroneous ruling by allowing both defense counsel and the prosecutor a full opportunity to explain their positions on the propriety of a mistrial. *Washington*, 434 U.S. at 515-16, 54 L. Ed. 2d at 734, 98 S. Ct. at 835. Such action on the part of the trial judge indicated that he acted "responsibly and deliberately, and accorded careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding." *Washington*, 434 U.S. at 516, 54 L. Ed. 2d at 734, 98 S. Ct. at 835.

In *Brady*, the defendants chose to represent themselves at their jury trial. *Brady*, 667 F.2d at 225. Although the heart of their defense was the competing-harms doctrine, the trial judge ruled that he would not allow evidence related to competing harms. *Brady*, 667 F.2d at 226. When the defendants persisted with their competing-harms defense, the trial court excused the jury and explained to the defendants his rulings on the inadmissibility of certain evidence. *Brady*, 667 F.2d at 227. When trial resumed the next day, one of the defendants again referenced the competing-harms doctrine. *Brady*, 667 F.2d at 227. The trial court found that defendant in contempt, determined that the action of that defendant rendered the continuance of the trial unfair to the remaining defendants, and ordered a mistrial. *Brady*, 667 F.2d at 227. The reviewing court determined that the trial judge failed to engage in a scrupulous exercise of discretion in declaring a mistrial. *Brady*, 667 F.2d at 229. The reviewing court found

it significant that the trial judge failed to consider alternatives to a mistrial, failed to afford counsel an opportunity to be heard on the subject, and failed to devote adequate time to the mistrial decision. *Brady*, 667 F.2d at 229. Specifically, the reviewing court found that "the apparent failure of the judge to consider alternatives and the abruptness with which he acted resemble the actions of the trial judge 'that can be fairly described as erratic' denounced in *United States v. Jorn*[, 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971)]." *Brady*, 667 F.2d at 230, quoting *Illinois v. Somerville*, 410 U.S. 458, 469, 35 L. Ed. 2d 425, 434, 93 S. Ct. 1066, 1073 (1973).

The present case is not like *Washington*, where the trial court gave defense counsel an opportunity to support his position and heard extended argument before declaring a mistrial. The present case is more like *Brady*, where the mistrial decision was made quickly, without consultation with the parties, and without consideration for alternatives. Specifically, the trial court acted hastily in response to the State's request for a mistrial, failed to consider any alternatives before declaring a mistrial, and took little time for reflection. The record reveals that the trial judge declared a mistrial because she was angry that defense counsel had not filed a pretrial motion *in limine* to address the line of questioning in the victim's cross-examination. Additionally, the trial judge acted without permitting the defendant to complete an offer of proof regarding the line of questioning. When defense counsel attempted to explain the relevance of his cross-examination, the trial court cut him off and reprimanded him. Additionally, the trial court did not give defense counsel an opportunity to explain his position on the propriety of a mistrial. Finally, the record reveals a lack of consideration for any alternatives at the time the mistrial was declared. The trial court did not consider any alternatives until the hearing on the defendant's motion to dismiss, when the trial court indicated that a limiting instruction would not have cured the alleged prejudice.

In sum, the hasty decision of the trial judge, the lack of timely consideration for alternatives, and the failure to afford counsel an opportunity to be heard on the issue, indicate that the trial court did not exercise sound discretion in declaring a mistrial. Courts have repeatedly found this improper. See *Jorn*, 400 U.S. at 487, 27 L. Ed. 2d at 557-58, 91 S. Ct. at 558 (determining that the trial judge acted so abruptly in discharging the jury that there was no opportunity for the defendant to object to the mistrial); *Grandberry v. Bonner*, 653 F.2d 1010, 1016 (5th Cir. 1981) (determining that the trial court's abrupt and precipitate declaration of a mistrial, without addressing either counsel, without pausing long enough for an objection to be registered,

and without considering alternatives, was an abuse of discretion); *Brady*, 667 F.2d at 229; *United States v. Starling*, 571 F.2d 934, 938 (5th Cir. 1978) (determining that the precipitate character of the trial court's decision, reflected in the rapid sequence of events, indicated that the judge did not carefully consider alternatives or show sufficient concern for the defendant's right to have his fate decided by the first impaneled jury). We therefore conclude that a second prosecution of the defendant is constitutionally barred on double jeopardy grounds.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

Reversed.

BOWMAN and KAPALA, JJ., concur.