NOTICE

Decision filed 09/28/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0619

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
|---|---|
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Crawford County. |
| | ) |
| v. | ) No. 05-CF-113 |
| | ) |
| JAMES A. BURTRON, | ) Honorable |
| | ) David M. Correll, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

On February 21, 1978, when asked to consider the deference a reviewing court should give to a trial judge's decision to declare a mistrial, the United States Supreme Court held, *inter alia*, "Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases." *Arizona v. Washington*, 434 U.S. 497, 513, 54 L. Ed. 2d 717, 733, 98 S. Ct. 824, 834 (1978).

The defendant in the present case, James A. Burtron, appeals an order of the circuit court of Crawford County denying his motion to dismiss the criminal charges against him on double jeopardy grounds, following the trial judge's *sua sponte* declaration of a mistrial during the defendant's trial on charges of aggravated criminal sexual assault (720 ILCS 5/12-14(c) (West 2004)). On appeal, the defendant questions the proper standard of review for a trial judge's *sua sponte* declaration of a mistrial, and he contends that because principles of double jeopardy prevent his retrial following the mistrial, the trial judge erred in denying his motion to dismiss the criminal charges against him. For the reasons that follow, we affirm.

1

For purposes of deciding the issues raised by the defendant on appeal, the circumstances underlying the criminal charges against the defendant are far less important than are the events that occurred at the trial. Accordingly, we shall touch only briefly on the alleged criminal acts. The defendant, who was born on October 2, 1936, was charged by information with one count of aggravated criminal sexual assault (720 ILCS 5/12-14(c) (West 2004)), and he was alleged to have "committed an act of sexual penetration by placing his finger in the vagina of C.B., a severely and profoundly retarded person at the time said act was committed." The alleged victim in the case, C.B., was 15 years old at the time of the alleged July 18, 2005, incident, and she suffered from a medical condition known as intractable epilepsy. As a result of severe seizures caused by her condition and brain damage resulting therefrom, on July 18, 2005, C.B. had a developmental age of approximately six years, three months. The defendant and C.B. lived on the same street in Robinson, several houses apart, and the sexual assault allegedly occurred when C.B. happened upon the defendant's house while searching the neighborhood for her lost cat.

The defendant's case came to trial on July 3, 2006. The defendant was represented at the trial by retained counsel, Roscoe D. Cunningham (hereinafter defense counsel). An examination of defense counsel's behavior at the trial is necessary to address the issues raised by the defendant on appeal. A complete review of the record on appeal provided to us by the defendant clearly shows that defense counsel engaged in a pattern of behavior which resulted in numerous sidebars and admonitions from the trial judge about defense counsel's conduct. Defense counsel was combative throughout the pretrial proceedings, as well as during the trial. From repeatedly asking irrelevant questions to becoming argumentative with a potential juror and many times with the trial judge, defense counsel's actions crossed the line from zealous representation to contemptuousness of the court and the rule of law, leading the trial judge to state, even before opening statements, on the record but outside the

2

presence of the jury, the following to defense counsel:

"You were trying to use a motion that was to determine whether or not the child was called to testify, whether the child was sufficiently at risk in having to testify, as to allow for hearsay. You were trying to use that as a method for getting something into the record that was totally unrelated. Yes, it has been like hand-to-hand combat and mud wrestling. I do become out of sorts because you are continuously trying to push the envelope. You know what the rules are and everything is like it becomes a shock. I have dreaded this, but it's where we are."

Further illustration of defense counsel's testing of the limits of propriety can be seen in his cross-examination of two law enforcement officers. Some of the questions he asked were technically inappropriate, lacking a proper foundation, while others were completely irrelevant and, frankly, downright bizarre. This questioning further exacerbated the situation, leading the trial judge to admonish defense counsel for interrupting opposing counsel, and after numerous nonsensical objections from defense counsel, it led the trial judge to respond that whatever defense counsel's purported objection was, it was overruled. The record clearly demonstrates the tense and charged atmosphere that had been building throughout the trial. When the State's Attorney concluded his cross-examination of the defendant, the judge inquired of defense counsel whether he wished to engage in redirect examination. Defense counsel then stated, in the presence of the jury, the following:

"Well, Your Honor, this is such a[–]such a serious case, I'm going to make an unusual suggestion to the [c]ourt and I hope it's not–that it's permitted. The [d]efendant would be willing to submit to a polygraph exam by the Illinois State Police."

Defense counsel had succeeded in pushing the envelope off the table. The State's Attorney began to say something, but he was interrupted by the judge, who ordered the attorneys into

3

his chambers. Although no transcript exists for the proceedings in the judge's chambers, affidavits from the State's Attorney and defense counsel indicate the following: (1) the entire amount of time spent in chambers was less than two minutes, (2) the trial judge in chambers commented that he had never in his career had a defense attorney deliberately destroy a trial by doing something that he knew to be inappropriate, (3) defense counsel asked that the trial be allowed to continue, (4) the trial judge asked defense counsel how the problem that defense counsel had created could be fixed, (5) defense counsel did not offer any suggestions for correcting the problem he had caused, (6) the trial judge stated that any corrective instruction he could give would have to be so prejudicial to the defendant that the instruction would itself create a mistrial, and (7) the State's Attorney stated that he did not believe the State could ask for or prevent a mistrial from being declared. Following the discussion in chambers, the judge returned to the bench and made the following announcement to the jury:

"Ladies and gentleman, something just took place that I have never had take place before. It has created a mistrial. You are discharged from your duties at this time. Thank you very much for your attendance through this trial. You have my most sincere apology."

The jury was then excused, and the judge stated for the record that he would reserve a ruling on the "contempt element" of the case until the parties submitted legal authority on that issue.

Defense counsel subsequently paid $1,505.94 to the court as reimbursement for the jurors' fees, postage, meals, and bailiff expenses related to the trial. Defense counsel also stated, in a subsequent affidavit, "I did not make the statements I did concerning a polygraph with the intent to cause a mistrial[,] nor is it my desire to create a mistrial."

Defense counsel subsequently withdrew from the case, and the defendant filed, *inter alia*, a motion to dismiss the charges against him on the grounds that double jeopardy prevented his retrial on those charges. A hearing on the motion to dismiss was held on

4

November 27, 2006. At the hearing, the defendant's replacement counsel suggested that the trial judge had acted prematurely and should have crafted a curative instruction rather than declaring a mistrial, particularly where, as happened in the case at bar, the defendant wanted the trial to continue. In response, the trial judge stated, on the record, the following:

"Well, there is no question that defense counsel wished to have the trial continue. Defense counsel wished to have the trial continue because he already had the benefit of his misconduct in front of the jury. The intentional misconduct of the defense counsel was found at that time to have been so prejudicial that it, in fact, created the manifest necessity for the mistrial. Defense counsel was asked in chambers if he had any instruction that he would suggest that might be appropriate and would be able to cure the prejudice that had been created by his intentional act. He was unable at that time to supply any[,] and I made the determination that if I were to so instruct the jury in such a fashion that it would cure the prejudicial impact of what he had done, that [*sic*] that instruction would be so inflammatory that it, in and of itself, would deny the [d]efendant a fair trial. So with this situation having been clearly created by defense counsel's blatant conduct, that then created the manifest necessity for the mistrial."

The motion to dismiss was denied, and this appeal followed.

The first issue raised by the defendant on appeal involves the proper standard of review for a trial judge's *sua sponte* declaration of a mistrial. The defendant proposes that this court apply a *de novo* standard of review "as is done in cases which involve a motion to suppress," because in the case at bar "there is no dispute regarding the events which transpired at the time of trial." The defendant provides no legal authority, and no persuasive argument, in support of his proposition, and we are aware of no cases that support it. Although the defendant has requested, and has been granted, permission to cite as additional

5

authority the recent Second District case of *People v. Longoria*, No. 2-06-0353, slip op. at 5 (July 26, 2007), in *Longoria* the only reason a *de novo* standard of review was employed was that the issue before the reviewing court was whether the trial court had applied the correct legal standard, which is clearly an issue of law. In the case at bar, there is no doubt that the trial court applied the correct legal standard, which, as explained in detail below, is whether there was a manifest necessity for a mistrial. At the hearing on the motion to dismiss held on November 27, 2006, discussed above, the judge expressly stated that in this case defense counsel's "blatant conduct *** created the manifest necessity for the mistrial," proof positive that the judge knew and applied the correct legal standard in this case. Accordingly, we do not believe that *Longoria* is at all applicable to the case at bar, and we are unpersuaded by the defendant's attempts to invoke a *de novo* standard of review for this case.

The State, on the other hand, points to a long and uncontradicted line of cases holding that the proper standard of review in a case such as this is the abuse-of-discretion standard. See, *e.g.*, *Arizona v. Washington*, 434 U.S. 497, 514, 54 L. Ed. 2d 717, 733, 98 S. Ct. 824, 834-35 (1978) (a trial judge's declaration of a mistrial "is entitled to great deference"); *People v. Friason*, 22 Ill. 2d 563, 566 (1961) (the reviewing court "must consider whether the trial judge abused his discretion"); *People v. Barfield*, 288 Ill. App. 3d 578, 584 (1997) (the discretion accorded to a trial judge "is not only broad but must be applied flexibly to the unique situation of each individual case"); *People v. Largent*, 337 Ill. App. 3d 835, 839 (2003) (expressly rejecting the contention that the declaration of a mistrial should be reviewed *de novo*). Although throughout this appeal–in his opening brief, in his reply brief, and at oral argument–in an effort to strengthen his case, the defendant has framed his arguments in language suggestive of *de novo* review, we decline to disturb well-reasoned and well-settled law in the absence of a compelling reason to do so, and we are not persuaded

6

that a compelling reason to do so exists in this case. Accordingly, we shall consider the defendant's second argument on appeal–that because principles of double jeopardy prevent his retrial following the mistrial, the trial judge erred in denying his motion to dismiss the charges against him–under the abuse-of-discretion standard that has governed claims such as his for more than 40 years in Illinois.

We begin by stating the legal precepts pertinent to the defendant's position. It is well-settled that the government "may not put a defendant in jeopardy twice for the same offense." *Arizona v. Washington*, 434 U.S. 497, 503, 54 L. Ed. 2d 717, 726, 98 S. Ct. 824, 829 (1978). Jeopardy attaches before a judgment becomes final, so the constitutional protection against double jeopardy extends to the defendant's right, if the defendant so desires, to have his or her trial completed before a particular tribunal. *Arizona*, 434 U.S. at 503, 54 L. Ed. 2d at 727, 98 S. Ct. at 829. This is true because a second trial, before a different tribunal, inevitably "increases the financial and emotional burden on the accused, prolongs the period in which [the accused] is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." *Arizona*, 434 U.S. at 503-04, 54 L. Ed. 2d at 727, 98 S. Ct. at 829. Although a retrial is automatically barred when a trial ends with an acquittal or a conviction, the same is not true when a criminal proceeding ends before a final resolution of the merits of the charges against the accused is reached. *Arizona*, 434 U.S. at 505, 54 L. Ed. 2d at 728, 98 S. Ct. at 830. A variety of circumstances may make it necessary to discharge a jury prior to the conclusion of a trial, and because those circumstances do not always result in unfairness to the accused, the accused's "valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present [the State's] evidence to an impartial jury." *Arizona*, 434 U.S. at 505, 54 L. Ed. 2d at 728, 98 S. Ct. at 830. Nevertheless, in light of the importance of the accused's right, and

7

because that right is frustrated, to some extent, by any mistrial, the State shoulders the "heavy" burden of justifying the mistrial and must demonstrate a manifest necessity for any mistrial that has been declared over the objection of the accused. *Arizona*, 434 U.S. at 505, 54 L. Ed. 2d at 728, 98 S. Ct. at 830.

The question then becomes, of course, What constitutes a manifest necessity? According to the United States Supreme Court, the word *necessity* must not be interpreted literally; rather, a "high degree" of necessity is required before a mistrial may be deemed appropriate. *Arizona*, 434 U.S. at 506, 54 L. Ed. 2d at 729, 98 S. Ct. at 831. Our colleagues in the Fourth District have held that the requirement of a manifest necessity "stands as a command to trial judges not to foreclose the defendant's right to have a particular tribunal decide his fate until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by continuing the proceedings." *People v. Street*, 316 Ill. App. 3d 205, 211 (2000). The *Street* court also noted that a reviewing court must consider whether a manifest necessity warranted a mistrial "based on the facts of each individual case," and it laid out a noncomprehensive list of factors for reviewing courts to consider. 316 Ill. App. 3d at 211-12. The *Street* court ultimately determined that, in the case before it, the trial judge's declaration of a mistrial over the objection of the defendant was not an exercise of sound discretion where the record did not show "that the trial judge considered the State's suggestion of a curative instruction, or any other alternative," before declaring the mistrial and did not show "that the judge articulated any reasons for rejecting" alternative measures. 316 Ill. App. 3d at 213.

In another opinion from our colleagues in the Fourth District, *People v. Largent*, 337 Ill. App. 3d 835, 843 (2003), the court concluded that the trial court's *sua sponte* declaration of a mistrial, over the defendant's objection, because of an emergency in one juror's family was not an exercise of sound discretion because the presence of that juror at the bedside of

8

the family member who had experienced the emergency–a broken leg–"might have been comforting, but it was not highly necessary." Our colleagues in the Second District recently weighed in on the issue of manifest necessity as well. In *People v. Dahlberg*, 355 Ill. App. 3d 308 (2005), they considered, *inter alia*, the relationship between the exercise of sound discretion and hasty decisionmaking. The *Dahlberg* court stated that the declaration of a mistrial could not be condoned where the actions of the trial court were irrational or irresponsible, and the court expressly held that the amount of time the court devoted to the decision to declare a mistrial was "of major importance." 355 Ill. App. 3d at 315. That is because a "hasty decision, reflected by a rapid sequence of events culminating in a declaration of a mistrial, tends to indicate insufficient concern for the defendant's constitutional rights." *Dahlberg*, 355 Ill. App. 3d at 315. The *Dahlberg* court ultimately held that in the case before it, the trial judge "acted hastily in response to the State's request for a mistrial, failed to consider any alternatives before declaring a mistrial, and took little time for reflection." 355 Ill. App. 3d at 316.

As explained above, the proper standard of review in a case such as this is the abuse-of-discretion standard. See, *e.g.*, *Arizona v. Washington*, 434 U.S. 497, 514, 54 L. Ed. 2d 717, 733, 98 S. Ct. 824, 834-35 (1978) (a trial judge's declaration of a mistrial "is entitled to great deference"); *People v. Friason*, 22 Ill. 2d 563, 566 (1961) (the reviewing court "must consider whether the trial judge abused his discretion"); *People v. Barfield*, 288 Ill. App. 3d 578, 584 (1997) (the discretion accorded to a trial judge "is not only broad but must be applied flexibly to the unique situation of each individual case"); *People v. Largent*, 337 Ill. App. 3d 835, 839 (2003) (expressly rejecting the contention that the declaration of a mistrial should be reviewed *de novo*). An abuse of discretion occurs when the decision made by the trial judge is " 'clearly against logic.' " *Largent*, 337 Ill. App. 3d at 839 (quoting *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 435 (1999)). A

9

reviewing court does not consider whether it would have made the same decision if placed in the position of the trial court; rather, a reviewing court considers whether the decision of the trial court was arbitrary, made without conscientious judgment, or otherwise made in such a way that, " 'in view of all of the circumstances, the [trial] court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *Largent*, 337 Ill. App. 3d at 839-40 (quoting *Bodine Electric of Champaign*, 305 Ill. App. 3d at 435).

It is with this standard of review firmly in mind, and against the backdrop of both the admonition of the United States Supreme Court that "[u]nless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases" (*Arizona v. Washington*, 434 U.S. 497, 513, 54 L. Ed. 2d 717, 733, 98 S. Ct. 824, 834 (1978)) and the admonition of our colleagues on the appellate court that a "hasty decision, reflected by a rapid sequence of events culminating in a declaration of a mistrial, tends to indicate insufficient concern for the defendant's constitutional rights" (*People v. Dahlberg*, 355 Ill. App. 3d 308, 315 (2005)), that we consider the case before us today.

At first blush, it might appear in this case that the decision made by the trial court was a hasty one, devoid of reflection and the contemplation of alternatives, particularly given the uncontradicted assertion that the time the parties spent in chambers with the judge before he stated that he was going to declare a mistrial did not exceed two minutes. Indeed, both the defendant and our dissenting colleague contend that the hasty-decision analysis found in *Dahlberg* is directly applicable to this case and should control its outcome. We do not agree. We begin by noting that the defendant's repeated assertion that the trial judge in this case took less than two minutes to reach his decision to *sua sponte* declare a mistrial over the objection of the defendant is unduly speculative and does not completely and accurately

10

reflect what happened in this case. As the recitation of some of the facts at the beginning of this opinion amply demonstrates, defense counsel's statement that the defendant would willingly submit to a polygraph examination was the last in a series of blatant indiscretions that included, *inter alia*, the following: (1) repeated attempts to abuse the rules of trial procedure, even after being warned not to do so, (2) excessive and repeated argument with the judge, even after being warned not to do so, and (3) repeated improper commentary before the jury regarding objections by, and other conduct of, the State's Attorney, again after being warned not to do so. Whether these and defense counsel's other indiscretions, described above, were the result of mere incompetence, or of the variety of unscrupulous intransigence and obstructionism against which the *Arizona* Court chastens, or of a combination thereof is not clear from the dry paper record presented to us for review; what is clear from the record is that all of these indiscretions were committed in the presence of the trial judge. We have thoroughly reviewed the entire record presented to us, and it is clear from that record that until defense counsel's outburst about the polygraph, the trial judge dealt with defense counsel's many indiscretions in a patient, calm, and professional manner. The defendant's assertions to the contrary notwithstanding, we do not believe that the record supports the conclusion that the judge in this case conceived and executed the remedy of a mistrial in less than two minutes. Rather, the record, taken as a whole, suggests that a cognizance of defense counsel's many indiscretions and their potential impact on the jury contributed to the judge's ultimate decision to declare a mistrial, a decision that might well have been carefully weighed, as a potential necessity if matters grew worse, for a number of hours prior to defense counsel's outburst about the polygraph. Support for this conclusion is also found in the judge's statement to defense counsel on the record, a full day before declaring the mistrial, that interacting with defense counsel had been "like hand-to-hand combat and mud wrestling," because defense counsel was "continuously trying to push the

11

envelope" when defense counsel knew "what the rules [were]," and in his admonition to defense counsel that the province of a motion *in limine* was "to avoid something being said that creates a mistrial." Accordingly, we find *Dahlberg* to be readily distinguishable from the case at bar.

We reiterate as well that in cases such as this one it is not the province of the reviewing court to consider whether it would have made the same decision if placed in the position of the trial court; rather, we must only consider whether the decision of the trial court was arbitrary, made without conscientious judgment, or otherwise made in such a way that, " 'in view of all of the circumstances, the [trial] court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *People v. Largent*, 337 Ill. App. 3d 835, 839-40 (2003) (quoting *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 435 (1999)). Here, our review of the record does not convince us that the trial judge's *sua sponte* declaration of a mistrial over the defendant's objection was clearly against logic, arbitrary, made without conscientious judgment, excessive of the bounds of reason, or ignorant of recognized principles of law. The mistrial in this case was declared late in the proceedings, after the judge had ample time to assess the demeanor and motivations of the parties involved, including defense counsel, throughout the trial. Given defense counsel's repeated misconduct, the judge reasonably could have concluded that a curative instruction (such as the instruction given by the trial court and characterized as "appropriate" by the reviewing court in *People v. Finley*, 312 Ill. App. 3d 892, 895-97 (2000)) would not have been sufficient to overcome the prejudice injected into the proceedings by defense counsel. Likewise, although defense counsel later averred that he "did not make the statements [he] did concerning a polygraph with the intent to cause a mistrial[,] nor [was] it [his] desire to create a mistrial," strikingly absent from defense counsel's affidavit is any assertion that he did not know it was improper to make his

12

statements or that he did not intentionally inject error into the trial for reasons other than to create a mistrial (*e.g.*, to improperly bolster the credibility of his client before the jury), and the trial judge reasonably could have concluded, after observing defense counsel throughout the trial, that defense counsel's outburst about the polygraph was a knowing and intentional escalation of his previous misconduct and that defense counsel's misconduct would have continued at the same pace, or perhaps grown worse, even after a curative instruction was given.

Under these circumstances, the judge's conclusion that a curative instruction would be to no avail in this case cannot be said to be clearly against logic, arbitrary, made without conscientious judgment, excessive of the bounds of reason, or ignorant of recognized principles of law. To the contrary, the judge stated for the record that he had considered and rejected a curative instruction, and he explained why. He also stated that he believed that defense counsel wanted the trial to continue because defense counsel "already had the benefit of his misconduct in front of the jury." His decision and reasoning are strongly supported by the record, and we decline to disturb his ruling.

To hold–in a case in which we have expressly found that the trial judge reasonably could conclude that intentional misconduct by counsel had injected serious error into the trial–that the judge nevertheless abused his discretion in concluding, after considering and rejecting a curative instruction, that a manifest necessity for a mistrial existed effectively would be to both undermine the abuse-of-discretion standard of review we have reiterated while purporting to uphold it and, if the trial court was correct in its conclusion, reward the sort of unscrupulous conduct by counsel the *Arizona* decision declares must not be tolerated. Affording the trial judge's decision the deference to which it is entitled, we conclude the judge did not abuse his discretion in finding a manifest necessity for the declaration of a mistrial in this case. Because principles of double jeopardy did not and do not bar the retrial

13

of the defendant under these circumstances, the judge did not err in denying the defendant's motion to dismiss the charges against him.

For the foregoing reasons, the order of the circuit court of Crawford County is affirmed.


Affirmed.


DONOVAN, J., concurs.


JUSTICE CHAPMAN, dissenting:

The majority implies that the fact that the judge was fed up with counsel's antics–"the last in a series of blatant indiscretions" (slip op. at 11)–justifies the court's *sua sponte* decision to declare a mistrial. While that may account for the court's hasty reaction, it was defense counsel's comment about the polygraph that required the judge's careful consideration. No amount of frustration allows the court to forgo the deliberate process imperative in safeguarding the defendant's constitutional rights against double jeopardy. Two minutes is two minutes. A judge cannot undertake the rigorous analysis required and arrive at a determination that manifest necessity warranted a mistrial in that extraordinarily short span of time. Despite the judge's pronouncements and the majority's contentions to the contrary, I do not believe that the court undertook any serious reflection or consideration of alternatives to preserve the trial's fairness. Based on the facts in this case, the court did not demonstrate a manifest necessity for a mistrial. I believe that both *Street* and *Dahlberg* support this conclusion. *People v. Street*, 316 Ill. App. 3d 205 (2000); *People v. Dahlberg*, 355 Ill. App. 3d 308 (2005). For those reasons, I believe that the judge's decision declaring a mistrial was clearly against logic and therefore an abuse of discretion. See *People v.*

14

*Largent*, 337 Ill. App. 3d 835, 839 (2003).  I would rule that double jeopardy barred a retrial of the defendant.

NO. 5-06-0619

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Crawford County. |
| | ) | |
| v. | ) | No. 05-CF-113 |
| | ) | |
| JAMES A. BURTRON, | ) | Honorable |
| | ) | David M. Correll, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed**:  September 28, 2007

---

**Justices**:  Honorable Stephen L. Spomer, J.

Honorable James K. Donovan, J.,
Concurs
Honorable Melissa A. Chapman, J.,
Dissents

---

**Attorney for Appellant**  Fred Johnson, Heller, Holmes & Associates, P.C., 1101 Broadway, P.O. Box 889, Mattoon, IL 61938-0889

---

**Attorneys for Appellee**  Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Kendra S. Peterson, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864; Hon. Thomas R. Wiseman, State's Attorney, Crawford County Courthouse, 105 Douglas Street, Robinson, IL 62454

---