**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250015-U

Order filed December 31, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal Noc Circuit No. 22-CM-520 |
| ALEJANDRO SALINAS, | ) ) ) | Honorable Marzell L. Richardson Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The court erred in declaring a mistrial *sua sponte* where the circumstances did not demonstrate a manifest necessity for a mistrial.

¶ 2    Defendant, Alejandro Salinas, appeals the Will County circuit court's denial of his motion to dismiss based on double jeopardy grounds. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4    In May 2022, the State charged defendant with battery (720 ILCS 5/12-3(a)(2) (West 2022)), alleging that defendant had knowingly and without legal justification made physical contact of an insulting or provoking nature with Rita Kuras by kissing her on the mouth. The case proceeded to a jury trial on October 29, 2024.

¶ 5    At trial, the State's first witness was Dr. Ajay Sood. Sood testified that he was a neurologist specializing in dementias. Sood had evaluated Kuras and determined that she was in the "severe stages" of Alzheimer's disease. After the State completed its direct examination of Sood, the court took a recess. During the recess, the State advised the court that their sole eyewitness, Sarah Okoh, had left the courthouse and was not planning to return to testify the following day despite being under subpoena. The State indicated that it would request a mistrial if Okoh did not appear because it could not prove its case without her testimony. The court agreed that Okoh's failure to appear would result in a mistrial and continued the trial to 1 p.m. the next day.

¶ 6    Prior to calling the jury into the courtroom to resume trial the following day, defendant advised the court that the only report provided by the State for their next witness, nurse practitioner Ashley Miniet, had been written by another physician. The State replied that it did not intend to introduce the report at trial and Miniet's testimony would be solely based on her observations during her clinical visit with Kuras. Defendant argued that because Miniet was being offered as an expert witness, the State was required to disclose any reports that Miniet had prepared regarding Kuras. The State averred that it did not have any medical reports that had not been tendered to defendant. When the court asked the State if there was a different report, the State responded that it would be relying on Miniet's recollection and reiterated that it did not have a report. The court inquired if Miniet had any reports and the State replied, "I—I do believe she might have something

in her medical files, but that was never tendered to us in discovery so we have not—we do not believe we're able to reference that at this point."

¶ 7    The court directed the State to speak to Miniet to determine if she had made any reports. In response, the State noted that Miniet had already been asked if she had made a report and that Miniet believed that she could not tender any reports because Kuras was deceased. The court remarked that the State knew it could have obtained the report through a court order.

¶ 8    After a short recess, the State informed the court that it intended to present Miniet as a lay witness rather than an expert. When the court asked if Miniet's testimony would be based on a report, the State responded that Miniet had read reports. The court then asked if Miniet had written reports. The State confirmed that Miniet had written a report, but the State had not received it because the subpoena requesting Kuras's medical reports had not included the specific medical group where Miniet was employed. The court informed the State that defendant was entitled to Miniet's report and stated, "[I]f that report cannot be produced within a short amount of time meaning today, we're going to have a problem" and "the problem is going to be that her testimony is going to be barred."

¶ 9    The State indicated it could obtain the report that same day with a court order. Defendant argued that the case should be dismissed with prejudice because the State had violated discovery by not disclosing the report. The court explained that it would need an offer of proof from the State regarding Miniet's expected testimony "to make [its] determination of whether to declare a mistrial in this case or not." The State represented Miniet would testify based on her observations regarding Kuras's mental capacity, communication abilities, and demeanor.

¶ 10　　　　After contentious arguments from the parties over whether the discovery violation was inadvertent, which included allegations from defense counsel that the State had lied and potentially committed a *Brady* violation by withholding exculpatory evidence, the court stated:

> "The problem that the Court has is that even if the Court chooses to bar this witness, the report is still out there, and I'm not quite sure if that report helps either side or hinders either side, but that report could very well be a subject of information that would be beneficial to either side in the testimony of Dr. Sood, and that is my problem here.

> It is not a situation that if I declare a mistrial that it's going to be with prejudice because it's not going to be. I don't believe that the state's attorney's office did anything intentionally improper in this matter other than neglecting to go a little bit further with their subpoena to determine whether there were reports or not.

> I am trying to figure out a way how I can rectify this problem and continue this jury trial, but I cannot figure out how I can do that with a missing report even if I bar the witness.

> I clearly asked everybody before I began this jury trial whether all discovery was complete. Everyone told me that it was. At this point the Court has to find that regardless of whose fault it was, discovery was not complete. And I *** said before, I don't know if this is an essential report or exactly what it is at this point. For that reason I don't think the Court has any choice but to declare a mistrial.

So a mistrial is declared. I will bring the jury in and explain what the situation is, and after that we will continue the matter for another date, and the mistrial will be without prejudice."

¶ 11 Defendant objected, arguing that the proper remedy would be a dismissal with prejudice because jeopardy had attached. The court rejected defendant's argument. After dismissing the jury, the court signed an order to have Miniet's report produced by 3 p.m. that day and continued the matter to the next day for trial setting. In doing so, the trial court acknowledged that the mistrial was over the objection of the defense. The State received Miniet's report later that same afternoon and tendered it to the defense. The next day, defendant requested a continuance to file a motion to dismiss based on double jeopardy.

¶ 12 A hearing on defendant's motion to dismiss was held on January 10, 2025. In denying defendant's motion, the court acknowledged that neither party wanted a mistrial and asserted that the heated nature of the arguments over Miniet's report had not affected its decision. The court stated that it had considered every alternative and had concluded that a mistrial was warranted. Defendant appeals.

¶ 13                                                                    II. ANALYSIS

¶ 14 On appeal, defendant argues that the court erred in denying his motion to dismiss the battery charge on double jeopardy grounds because no manifest necessity existed to declare a mistrial. Both the United States and Illinois Constitutions bar successive prosecutions against a defendant for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. Constitutional double jeopardy protections attach when a jury is empaneled and sworn. *People v. Moon*, 2022 IL 125959, ¶ 67.

¶ 15    When a mistrial is declared over a defendant's objection, the defendant is deprived of his right to be tried before a particular tribunal and retrial is not permitted absent a manifest necessity for the mistrial. *People v. Shoevlin*, 2019 IL App (3d) 170258, ¶ 25. Whether a manifest necessity exists is dependent on the facts of each case. *People v. Dahlberg*, 355 Ill. App. 3d 308, 315 (2005). To determine whether a manifest necessity warranted a mistrial, a reviewing court may consider a variety of factors, including:

"(1) whether the difficulty was the product of the actions of the prosecutor, defense counsel, or trial judge, or was events over which the participants lacked control; (2) whether the difficulty could have been intentionally created or manipulated by the prosecution to strengthen its case; (3) whether the difficulty, prejudice, or other legal complication might have been 'cured' by another alternative that would have preserved the trial's fairness; (4) whether the trial judge actually considered the alternatives to a mistrial; (5) whether a subsequent conviction would be subject to reversal on appeal; (6) whether the trial judge acted in the heat of the trial confrontation; (7) whether the trial judge's decision rested on an evaluation of the demeanor of the participants, the 'atmosphere' of the trial, or any other factors that similarly are not amenable to strict appellate review; (8) whether the trial judge granted the mistrial solely for the purpose of protecting the defendant against possible prejudice; (9) whether the evidence the State presented, prior to the mistrial, suggested a weakness in its case (*e.g.*, a witness failed to testify as anticipated); (10) whether the jurors had heard enough of the case to formulate some tentative opinions;

6

(11) whether the case had proceeded so far as to give the prosecution a substantial preview of the defense's tactics and evidence; and (12) whether the composition of the jury was unusual." *People v. Street*, 316 Ill. App. 3d 205, 211-12 (2000).

We review the denial of a motion to dismiss on double jeopardy grounds for an abuse of discretion. *People v. Ventsias*, 2014 IL App (3d) 130275, ¶ 10.

¶ 16        Here, there is no dispute that the mistrial was declared by the court over defendant's objection and that jeopardy had attached prior to the court's declaration. The record reflects that the State violated discovery rules by failing to acquire and disclose Miniet's report to the defense. The court abruptly declared a mistrial at the end of a heated exchange between the parties over whether the violation was intentional. The record demonstrates that the court considered no alternatives other than barring the witness and there is no indication the court carefully considered defendant's interest in having the trial conclude before a particular tribunal. See *Shoevlin*, 2019 IL App (3d) 170258, ¶ 28 (the court's consideration of all reasonable alternatives before declaration of a mistrial is imperative). Rather, the court stated, "I am trying to figure out a way how I can retify this problem and continue this jury trial, but I cannot figure out how I can do that with a missing report even if I bar the witness."

¶ 17        We observe that when the possibility of a mistrial was first raised the previous day due to the potential nonappearance of the State's key witness, the court continued the trial to the next day. In contrast, the court never considered whether a short recess or continuance to obtain the report could have sufficiently protected defendant's interest regarding the discovery violation, even though the report at issue was expected to be received that same day. See *People v. Kosobucki*, 2021 IL App (2d) 190476, ¶ 70 (mistrial is not the proper remedy for a discovery violation where

7

a recess or continuance would avoid surprise or prejudice to the defendant). In fact, the record reveals that the report was received shortly after the court declared a mistrial and the parties agree that the information contained therein was neither inculpatory nor exculpatory. Therefore, a brief continuance would have effectively cured the issue and allowed the trial to proceed. See *id.* ¶ 67 (no manifest necessity where "the problem giving rise to the declaration of a mistrial could have been corrected without aborting the proceeding").

¶ 18 Accordingly, as there was no manifest necessity to justify the declaration of a mistrial over defendant's objection, the court abused its discretion in denying defendant's motion to dismiss the battery charge on double jeopardy grounds.

¶ 19 III. CONCLUSION

¶ 20 The judgment of the circuit court of Will County is reversed.

¶ 21 Reversed.